**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------x

ERIC BISCHOFF, individually and as a member      :
of Frank Brunckhorst Co., L.L.C. and in the right
of and on behalf of Frank Brunckhorst Co., L.L.C.,   :

               Plaintiff,      :

         - against -      :

BOAR'S HEAD PROVISIONS CO., INC. and FRANK   :
BRUNCKHORST III and ROBERT S. MARTIN,
individually and as managers and members of Frank   :
Brunckhorst Co., L.L.C. and as directors and officers
of Boar's Head Provisions Co., Inc., and BARBARA   :
BRUNCKHORST, individually and as a member of
Frank Brunckhorst Co., L.L.C. and as a director of   :
Boar's Head Provisions Co., Inc.,

               Defendants,      :

         -and-      :

FRANK BRUNCKHORST CO., L.L.C.,      :

           Nominal Defendant.      :

------------------------------------------------------------------x

**06 CV 00106**

**JUDGE CHIN**

Case No.:

**NOTICE OF REMOVAL**



RECEIVED
JAN 0 6 2006
U.S.D.C. S.D. N.Y.
CASHIERS

## <u>DEFENDANTS' NOTICE OF REMOVAL</u>

      Defendants, Boar's Head Provisions Co., Inc., a Delaware corporation, Frank

Brunckhorst III, Robert S. Martin, Barbara Brunckhorst, and Frank Brunckhorst Co., L.L.C., a

New York limited liability company (collectively, "Defendants"), by their attorneys, Weil,

Gotshal & Manges, LLP, respectfully submit this Notice of Removal for the removal of the

above-captioned case from the Supreme Court of the State of New York, County of New York,

pursuant to 28 U.S.C. §§ 1441 and 1446.

      In support of removal, Defendants state:

      1.     On December 5, 2005, Plaintiff Eric Bischoff ("Plaintiff") filed a

Summons and Complaint for this action (<u>Exhibit "A"</u>, annexed hereto), in the Supreme Court of

the State of New York, County of New York, under Index No. 604265/05, against the above named defendants.

2.    Plaintiff Eric Bischoff, an individual, is a citizen of the State of New York.

3.    Defendant Boar's Head Provisions Co., Inc. is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in the State of Florida. It was allegedly served with the Summons and Complaint in this action in the State of Florida on December 8, 2005.

4.    Defendant Frank Brunckhorst III, an individual, is a citizen of the State of Florida. He was allegedly served with the Summons and Complaint in this action in the State of Florida on December 8, 2005.

5.    Defendant Robert S. Martin, an individual, is a citizen of the State of Florida. He received a copy of the Summons and Complaint in this action in the State of Connecticut on or about December 9, 2005.[1]

6.    Defendant Barbara Brunckhorst, an individual, is a citizen of the State of Florida. She was allegedly served with the Summons and Complaint in this action in the State of Florida on December 20, 2005.

7.    Frank Brunckhorst Co., L.L.C., named in this action by Plaintiff solely as a "nominal defendant," is a limited liability company organized and existing under the laws of the State of New York. The members of Frank Brunckhorst Co., L.L.C. are (i) Richard Kandel and Mark Brier, as trustees of the Martin 2003 Investment Trust and the Martin 2005 Investment Trust (the trustees, both of whom are individuals, are citizens of the State of New York); (ii) Robert S. Martin, as trustee of the Frank Brunckhorst III 2001 Trust (the trustee, an individual, is a citizen of the State of Florida); (iii) Frank Brunckhorst III, as trustee of the Barbara Brunckhorst 1994 Trust (the trustee, an individual, is a citizen of the State of Florida); (iv)

---

[1]    Service of process on Mr. Martin was attempted, but not effected, by delivering a copy of the Summons and Complaint to the residence of his former wife on December 8, 2005. He received a copy of the Summons and Complaint on or about the following day.

plaintiff, and Kim Baptiste, as trustee of the Eric Bischoff GRAT (plaintiff and the trustee are individuals and citizens of the State of New York); and (v) Richard Stravitz, an individual, is a citizen of the State of Virginia.

8.    All defendants except for Frank Brunckhorst Co., L.L.C. are diverse from Plaintiff, who is a New York citizen. And while Frank Brunckhorst Co., L.L.C. is not diverse from Plaintiff since certain of its members are New York citizens, Frank Brunckhorst Co., L.L.C. -- named only as a "nominal defendant" -- must be disregarded for this purpose. Generally, the citizenship of nominal defendants cannot prevent removal and their existence is disregarded for purposes of determining diversity. See 16 Moore's Federal Practice § 107.14[2][c][iv][A] (3d ed. 2002). "'[C]itizens' upon whose diversity a plaintiff grounds jurisdiction must be real and substantial parties to the controversy." Navarro Savings Assn. v. Lee, 446 U.S. 458, 460, 100 S.Ct. 1779, 64 L. Ed. 2d 425 (1980). A nominal defendant is one against whom "there is no possibility, based on the pleadings, that the plaintiff can state a cause of action . . . in state court." Pampillonia v. RJR Nabisco, Inc., 138 F.3d 459, 461 (2d Cir. 1998). Thus, Federal courts must disregard nominal parties and "rest jurisdiction only upon the citizenship of real parties to the controversy." Navarro, 446 U.S. at 461.

9.    Plaintiff asserts seven damages claims for relief in this action, seeking hundreds of millions of dollars, but none from Frank Brunckhorst Co., L.L.C. The sole basis for naming that entity as a defendant is that Plaintiff's First, Second, Fourth, Fifth, Sixth and Seventh Causes of Action (sounding in breach of fiduciary duty; aiding and abetting breach of fiduciary duty; waste; aiding and abetting waste; unjust enrichment; and money had and received, respectively) purport to be derivative actions by Plaintiff on behalf of nominal defendant Frank Brunckhorst Co., L.L.C.[2] And, in a proper derivative action the corporation on whose behalf the action is brought, though only a nominal defendant, is, nevertheless, for the purpose of diversity jurisdiction, treated as a true defendant. Haymes v. Columbia Pictures

---

[2]    The remaining Third Cause of Action for breach of contract is asserted by the Plaintiff against Defendants other than Frank Brunckhorst Co., L.L.C.

Corp., 16 F.R.D. 118, 120 (S.D.N.Y.1954) (citing Lavin v. Lavin, 182 F.2d 870 (2d Cir. 1950)). But, as a matter of settled New York law, a member of a New York limited liability company lacks standing to and cannot bring a derivative action on its behalf. See Hoffman v. Unterberg, 9 A.D.3d 386, 388-89, 780 N.Y.S.2d 617, 620 (2d Dep't 2004) (a member of a New York limited liability company cannot bring a derivative action on behalf of the company); Schindler v. Niche Media Holdings, LLC, 1 Misc.3d 713, 716, 772 N.Y.S.2d 781, 785 (Sup. Ct. N.Y. Co. 2003) (same). Frank Brunckhorst Co., L.L.C. was named as a "nominal defendant" solely to defeat this Court's diversity jurisdiction and to prevent this action from being heard before this or any other federal court. See Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc., 373 F.3d 296, 302 (2d Cir. 2004) (doctrine of fraudulent joinder prevents plaintiffs from abusing 28 U.S.C. § 1332(a) who join non-diverse parties solely in an effort to defeat federal jurisdiction); see also Hill v. Delta Int'l Mach. Corp., 286 F. Supp. 2d 427, 431 (S.D.N.Y. 2005) (holding removal proper under doctrine of fraudulent joinder). Because the sole non-diverse defendant was fraudulently and improperly joined, removal is proper.

10.    Removal is also timely. The affidavits of service that Defendants have been able to obtain regarding Plaintiff's attempts to effect service are attached to this Notice as Exhibit "B". Pursuant to 28 U.S.C. § 1446(b), Defendants have, at a minimum, thirty days from the earliest purported service on any of them, i.e., December 8, 2005, or until January 9, 2006 (since January 7, 2006 is on a Saturday), to file this Notice of Removal. Pursuant to 28 U.S.C. § 1446(d), Defendants will be giving Plaintiff written notice of removal, and will be filing this Notice of Removal with the Clerk of the Supreme Court of the State of New York, County of New York.

11.    The Supreme Court of the State of New York, County of New York, where this action was filed, is located within the jurisdiction of the United States District Court for the Southern District of New York.

12.    This Court has original jurisdiction over this civil action under 28 U.S.C. § 1332, because the amount in controversy exceeds $75,000.00, exclusive of interests and costs,

and, absent Plaintiff's fraudulent and/or improper joinder of Frank Brunckhorst Co., L.L.C. as a "nominal defendant" and improper assertion of derivative claims on its behalf for the purpose of defeating diversity jurisdiction, there is complete diversity of citizenship between the named parties. See Briarpatch, *supra*, 373 F.3d at 302 ("Under the [fraudulent joinder] doctrine, courts overlook the presence of a non-diverse defendant if from the pleadings there is no possibility that the claims against that defendant could be asserted in state court.").

13.    Removal of this case to this Court is proper pursuant to the provisions of 28 U.S.C. § 1441 because none of the parties properly joined as defendants is a citizen of New York, and removal is effectuated by the procedure set forth in 28 U.S.C. § 1446.

14.    By removing this action, Defendants do not waive any defenses or counterclaims that may exist.

15.    Attached hereto as Exhibit "C" is a true and correct copy of a Stipulation, dated December 29, 2005, in which, among other things, Plaintiff agreed to extend Defendants' time to appear or otherwise to respond to the Complaint until February 17, 2006.

WHEREFORE, Defendants respectfully request that this Court remove this action from the Supreme Court of the State of New York, County of New York, to the United States District Court for the Southern District of New York, and grant Defendants such other and further relief which the Court deems just and proper.

Dated: New York, New York
      January 5, 2006

WEIL GOTSHAL & MANGES LLP

_____
Peter D. Isakoff (PI-1614)
Mitchell D. Haddad (MH-7782)
Jared R. Friedmann (JF-2004)
767 Fifth Avenue
New York, New York 10153
Telephone 212-310-8000
Facsimile  212-310-8007

and

Martin S. Hyman (MH-4131)
Golenboch Eiseman Assor
Bell & Peskoe LLP
437 Madison Avenue
New York, NY 10022
Telephone 212-907-7360
Facsimile  212-754-0777

Attorneys for Defendants

# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
----------------------------------------X

ERIC BISCHOFF, individually and as a member of
Frank Brunckhorst Co., L.L.C. and in the right of and
on behalf of Frank Brunckhorst Co., L.L.C.,

        Plaintiff,

      - against -

BOAR'S HEAD PROVISIONS CO., INC. and
FRANK BRUNCKHORST III and ROBERT S.
MARTIN, individually and as managers and members
of Frank Brunckhorst Co., L.L.C. and as directors and
officers of Boar's Head Provisions Co., Inc., and
BARBARA BRUNCKHORST, individually and as a
member of Frank Brunckhorst Co., L.L.C. and as a
director of Boar's Head Provisions Co., Inc.,

        Defendants,

    -and-

FRANK BRUNCKHORST CO., L.L.C.,

        Nominal Defendant.
----------------------------------------X

Index No.: 604265/05

Date of Filing: 12/05/05

Plaintiff designates New
York County as the place
of trial.

**SUMMONS**

12/8/05
10:30 AM

P. Stallday
#0001
c/s

NEW YORK
COUNTY CLERK'S OFFICE

DEC 5 2005

NOT COMPARED
WITH COPY FILED

To the above-named Defendants:

    **You are hereby summoned to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's Attorneys within twenty days after the service of this summons, exclusive of the day of service (or within thirty days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.**

    The basis of the venue designated is the residence of Plaintiff, which is 1075 Park Avenue, New York, New York 10128, County of New York.

Dated: New York, New York
      December 5, 2005

SCHULTE ROTH & ZABEL LLP

By:  Martin L. Perschetz
     Michael E. Swartz
     919 Third Avenue
     New York, New York 10022
     (212) 756-2000

To:

Boar's Head Provisions Co., Inc.
400 Sarasota Quay,
Sarasota, FL  34236

Frank Brunckhorst III
1400 Ladue Lane
Sarasota, FL  34231

Robert S. Martin
15 Lighthouse Point Dr
Longboat Key, FL  34228

Barbara Brunckhorst
7960 Sanderling Rd
Sarasota, FL  34242

Frank Brunckhorst Co., L.L.C.
400 Sarasota Quay,
Sarasota, FL  34236

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------------x

ERIC BISCHOFF, individually and as a member of     :
Frank Brunckhorst Co., L.L.C., and in the right of and  :
on behalf of Frank Brunckhorst Co., L.L.C.,          :

               Plaintiff,            :

     - against -            :

BOAR'S HEAD PROVISIONS CO., INC. and         :
FRANK BRUNCKHORST III and ROBERT S.          :
MARTIN, individually and as managers and members :
of Frank Brunckhorst Co., L.L.C. and as directors and  :
officers of Boar's Head Provisions Co., Inc., and      :
BARBARA BRUNCKHORST, individually and as a    :
member of Franck Brunckhorst Co., L.L.C. and as a    :
director of Boar's Head Provisions Co., Inc.,          :

         Defendants,            :

     - and -               :

FRANK BRUNCKHORST CO., L.L.C.,               :

       Nominal Defendant.           :
-----------------------------------------------------------------x

Index No. 604265/05

COMPLAINT

     Plaintiff Eric Bischoff ("Plaintiff"), by his attorneys Schulte Roth & Zabel LLP, as

and for his complaint on behalf of himself and in the right of Frank Brunckhorst Co., L.L.C. ("FB

Co." or the "Company") and its members, alleges against Defendants Boar's Head Provisions Co.,

Inc. ("Provisions"), Frank Brunckhorst III and Robert S. Martin, both individually and in their

capacities as officers and directors of Provisions and managers of FB Co., and Barbara Brunckhorst,

individually and as a member of FB Co. and a director of Provisions, as follows.

## NATURE OF THIS ACTION

1.  FB Co. and Provisions are both privately-held companies that continue to be held primarily by the direct descendants of the founders of the companies.  This action arises from Defendants' wrongful diversion, through self-dealing, of several hundred million dollars in profits from FB Co., which owns the nationally-famous Boar's Head brand and distributes Boar's Head-branded products, to Provisions, which manufactures meat products sold under the Boar's Head brand.  Unless prevented, Defendants likely will continue to divert an additional several hundred million dollars in FB Co. profits.

## INTRODUCTION AND SUMMARY

2.  During the 1910's, Frank Brunckhorst began distributing delicatessen products via a red and black horse-drawn wagon to small stores in Brooklyn, New York.  Emblazoned on the side of that wagon was the now-famous logo that consists of the head of a boar inside a circle or oval (the "Boar's Head Logo").  At or about that time, the Boar's Head brand (originally the "Boar Head" brand) was purchased by Frank Brunckhorst.  Both the Boar's Head brand and the Boar's Head Logo have been owned and used by Brunckhorst and/or FB Co. ever since.  In 1933, Brunckhorst's son and others formed Provisions to manufacture meat products, which FB Co. distributed under the Boar's Head brand.

3.  Today, the Boar's Head brand is nationally famous, and Provisions carefully states on each page of its website that "Boar's Head Provisions Co., Inc. Boar's Head® and Boar's Head Brand® are registered trademarks of Frank Brunckhorst Co., LLC."  It does so because the Boar's Head name is an extremely valuable trademark that has substantial goodwill.  Indeed, the Boar's Head name is so well known that advertising for Provisions' products has urged customers to "Demand the Brand," a slogan that has been prominently featured on its website and in radio and

- 2 -

television advertising campaigns for years. FB Co.'s ownership of the Boar's Head brand is confirmed in filings with the United States Patent and Trademark Office.

4.  Although almost all the shares of FB Co. and Provisions continue to be owned by descendants of the founders of the companies, the shareholders of the two companies are not the same, and most of the shareholders do not have equal ownership interests in the two companies. The companies are separate legal entities, and the managers, directors and officers of those companies owe fiduciary duties to their own shareholders and not the other's.

5.  Despite the fact that Provisions openly acknowledges that the Boar's Head brand is owned by FB Co., this crucial fact is ignored when revenues are allocated between the companies, resulting in a gross misallocation of revenues in favor of Provisions at FB Co.'s expense. This is evident in their respective operating margins, which are way out of sync with peer companies. Based on returns on assets and earnings generated by comparable companies and the profits earned from the sale of Boar's Head-branded products manufactured by third parties, the majority of the profits earned collectively by the two companies are properly attributable to the very strong Boar's Head brand. Further, Provisions' operating margin is reported at over double the operating margin of comparable consumer food companies, while FB Co.'s margin on Provisions-manufactured products is reported at less than half that of comparable companies.

6.  The misallocation between the two companies is no accident. The individual Defendants, who control both companies, collectively have a greater ownership interest in Provisions than in FB Co., and they have engaged in self-dealing through a series of related-party transactions to divert profits from FB Co. to Provisions in order to enrich themselves. This misallocation of revenues has shifted hundreds of millions of dollars in pre-tax profits from FB Co.

to Provisions, and if not corrected, will improperly shift several hundred million dollars more in profits to Provisions in the future.

7.  In this action, Plaintiff brings direct claims and derivative claims on behalf of FB Co. against the managers of FB Co., certain directors of Provisions, and Provisions itself for breach of fiduciary duty, breach of the FB Co. Operating Agreement (the "Operating Agreement"), waste, aiding and abetting breach of fiduciary duty, aiding and abetting waste, unjust enrichment, and money had and received.  Plaintiff seeks monetary damages and equitable remedies for Defendants' improper conduct.

## THE PARTIES

8.  Plaintiff Eric Bischoff is an individual who resides in New York, New York. Plaintiff is a member of FB Co., and a shareholder and employee of Provisions.  During most of the relevant period, Eric has had a 20.37% ownership interest in FB Co. and an 8.333% ownership interest in Provisions through shares he owns personally and through a grantor retained annuity trust ("GRAT").  Thus, he is harmed whenever profits belonging to FB Co. are diverted to Provisions.

9.  Defendant FB Co. is a New York limited liability company.  FB Co. generally does business in New York, maintains an office in Brooklyn, New York, and has its corporate headquarters at 400 Sarasota Quay, Sarasota, Florida.  It is a necessary party pursuant to CPLR § 1001(a) but is joined here solely as a nominal party.

10.  Defendant Provisions is a Delaware corporation.  Provisions generally does business in New York, maintained an office in Brooklyn, New York, when some of the improper diversion of assets took place, and presently has its headquarters at 400 Sarasota Quay, Sarasota, Florida.

- 4 -

11.    Defendant Frank Brunckhorst is an individual who resides in Sarasota, Florida. He is a member and manager of FB Co., and is a shareholder, director and officer of Provisions. During the relevant period, Defendant Frank Brunckhorst, himself or through one or more trusts he has established, had a 12.352% ownership interest in FB Co. until May 2000, when his ownership interest increased to 25.04%. At all relevant times, he and/or trusts he established held a 25% ownership interest in Provisions. Since May 2000, when Defendant Frank Brunckhorst had roughly equivalent ownership percentages in both companies, he continued to earn proportionately more net of tax whenever Provisions instead of FB Co. earned profits.

12.    Defendant Martin is an individual who resides in Florida. He is a member and manager of FB Co., and a shareholder, director and officer of Provisions. At all times during the relevant period, Defendant Martin, himself or through one or more trusts established by him, had a 29.59% interest in FB Co. and a 41.667% ownership interest in Provisions.

13.    Defendant Barbara Brunckhorst is an individual who resides in Sarasota, Florida. She is a member of FB Co. and a shareholder and director of Provisions. She currently owns, herself or through one or more trusts established by her, a 25% interest in Provisions and a 12.5% interest in FB Co. Prior to May 2000, she owned an 18.844% interest in FB Co.

14.    Defendants Frank Brunckhorst and Martin are collectively referred to herein as "Defendant Managers" when acting in their capacities as managing and controlling members of FB Co. Defendants Frank Brunckhorst, Martin, and Barbara Brunckhorst are collectively referred to herein as "Defendant Directors" when acting in their capacities as directors and controlling shareholders of Provisions. Each of the Defendants held their aforementioned positions throughout the relevant period.

## JURISDICTION AND VENUE

15.    Personal jurisdiction is proper over all Defendants pursuant to New York

Civil Practice Law and Rules ("CPLR") Sections 301 and 302. Provisions and FB Co. have

maintained or continue to maintain offices in New York, respectively, during the relevant period.

All Defendants, among other things, transacted business in New York relating to the claims herein,

committed tortious acts either in New York or outside of New York that caused injuries within New

York, and continue regularly to solicit business and derive substantial revenue from goods sold and

services rendered in New York.

16.    Venue is proper in New York County pursuant to CPLR 503 because

Plaintiff resides in this county.

## FACTUAL ALLEGATIONS

**The History of the Companies**

17.    In the early part of the last century, the original Frank Brunckhorst, the great

grandfather of Plaintiff and Defendants Martin and Frank Brunckhorst, and the grandfather of

Defendant Barbara Brunckhorst, began distributing meat products to small delicatessens and "Mom

and Pop" stores in Brooklyn, New York in his red and black wagon. That wagon prominently

displayed the now-famous Boar's Head Logo.

18.    Prior to 1918, Frank Brunckhorst purchased the "Boar's Head" and "Boar's

Head Brand" marks from another Brooklyn provisioner, who created the marks in or about 1890.

Those marks, other marks used by FB Co., as well as the Boar's Head Logo (collectively, the

"Boar's Head Brand"), have been the exclusive property of Frank Brunckhorst, and subsequently FB

Co., ever since then.

- 6 -

19.    In its trademark applications filed with the Unites States Patent and

Trademark Office, FB Co. has represented in sworn submissions that it had been using the Boar's

Head Brands since before January 1, 1930, and had been using them in interstate commerce since

before January 1, 1976.

20.    In 1933, years after the Boar's Head Brands had been in continuous use by

FB Co., Provisions was incorporated by Frank Brunckhorst's wife, his son (Frank Brunckhorst, Jr.),

his son-in-law (Bruno Bischoff), and another individual to produce meats to be distributed by FB

Co.

21.    For the first several decades of the companies' existence, the companies sold

their products exclusively in New York. In or about 1975, Provisions' meat became federally

inspected, which enabled it to be sold throughout the country. When the companies expanded their

geographic scope, their revenues exploded as they began selling their products to supermarkets,

delicatessens and other establishments throughout the country. In 2004, revenues from sales by the

two companies combined exceeded $850 million, and together they earned over $80 million in pre-

tax profits. Earnings in 2003 were even higher. That year, they exceeded $100 million.

22.    The companies are now extremely valuable. In November 2004, Defendants

obtained an independent appraisal of FB Co. and Provisions, which valued the combined companies

in excess of $1 billion, and subsequently they were offered $1.2 billion for the companies.

## The Ownership of the Companies

23.    From the early part of 1999 through about May 2000, the following individuals, or trusts they formed, held approximately the following ownership interests in the two companies:

| Individual | Percentage Ownership of Provisions | Percentage Ownership of FB Co. |
|---|---|---|
| Defendant Martin | 41.667% | 29.590% |
| Defendant Frank Brunckhorst | 25% | 12.352% |
| Defendant Barbara Brunckhorst | 25% | 18.844% |
| Plaintiff | 8.333% | 20.370% |
| Richard Stravitz | 0% | 18.844% |
|  | 100% | 100% |

24.    Accordingly, during this period, Defendants Frank Brunckhorst, Martin, and Barbara Brunckhorst (the Defendant Directors) collectively owned 91.667% of Provisions and 60.786% of FB Co., while Plaintiff and Stravitz collectively owned 8.333% of Provisions and 39.214% of FB Co. For every dollar earned by Provisions, Defendant Directors received $0.92, while they earned only $0.61 for every dollar earned by FB Co. Plaintiff and Stravitz, on the other hand, collectively earned $0.08 for every dollar earned at Provisions but $0.39 for ever dollar earned at FB Co. Thus, all things being equal, Defendant Directors earned 50% more ($.92 instead of $0.61) and minority shareholders Plaintiff and Richard Stravitz ("Stravitz") earned about 80% less ($.08 instead of $.39) whenever profits were improperly allocated to Provisions instead of to FB Co.

25.     Subsequently, in or about May 2000, Defendant Frank Brunckhorst's interest in FB Co. increased to approximately 25% when he acquired certain shares that previously had belonged to Stravitz and Defendant Barbara Brunckhorst, resulting in the following ownership interests by the individuals or trusts they had formed:

| Individual | Percentage Ownership of Provisions | Percentage Ownership of FB Co. |
|---|---|---|
| Defendant Martin | 41.667% | 29.590% |
| Defendant Frank Brunckhorst | 25% | 25.040% |
| Defendant Barbara Brunckhorst | 25% | 12.500% |
| Plaintiff | 8.333% | 20.370% |
| Richard Stravitz | 0% | 12.500% |
| | 100% | 100% |

26.     Thus, since May 2000, Defendant Directors collectively owned a 91.667% interest in Provisions, and a 67.13% interest in FB Co., while Plaintiff and Stravitz collectively owned 8.333% of Provisions and 32.87% of FB Co. This meant that for every dollar of profit improperly directed from FB Co. to Provisions, Defendant Directors earned nearly 40% more in profits ($.92 instead of $.67) and minority shareholders Plaintiff and Stravitz earned about 75% less in profits ($.08 instead of $.33). Although recently Defendant Frank Brunckhorst has owned roughly the same percentage interest in both companies, on information and belief, he continues to benefit net of company-paid and personal taxes by shifting profits from FB Co. to Provisions. Thus, dollar-for-dollar, Defendant Frank Brunckhorst's after-tax profits are greater for profits earned by Provisions than for FB Co.

27.     This disparity in ownership interests, as well as post-tax profitability,

provided Defendant Managers and Defendant Directors (who are the Defendant Managers plus

Defendant Barbara Brunckhorst), with a strong economic incentive to shift profits from FB Co. to

Provisions, which they did.

**The Current Relationship of the Companies**

28.     FB Co. and Provisions are two separate companies, with separate assets.

Defendant Managers owe a fiduciary duty to FB Co. and its members to maximize its value and to

obtain a fair price whenever it licenses or otherwise permits use of its trademark and/or provides

services to Provisions or any other company.  Defendants' duties flow from the Operating

Agreement, their roles as Managers thereunder, and the obligations and duties imposed on

Managers, controlling shareholders, and fiduciaries by New York law.

29.     The division of responsibilities between the two companies is much as it

always has been.  Provisions acquires and processes raw materials for sale exclusively to FB Co.

Provisions currently manufactures meat products, including slicing meats (such as ham, roast beef,

bologna, pastrami, turkey and chicken) and hot dogs, in its four wholly-owned manufacturing plants

located in Virginia, Arkansas, and Michigan.  It has no patents to any meat processes or

manufacturing techniques.  All of its products are distributed through FB Co.

30.     FB Co. markets and sells food products under the Boar's Head Brands in over

thirty states.  FB Co.'s distribution network is particularly strong in New York and could only be

replicated at an exorbitant cost.

31.     Not only does FB Co. distribute the products manufactured by Provisions, but

it also distributes complementary products manufactured by others, such as cheese, mustard,

sauerkraut and horseradish, under the Boar's Head Brand.  FB Co. purchases meat products from

third parties when Provisions does not have the capacity or technology to manufacture them.

- 10 -

Approximately 30% of the products distributed by FB Co. under the Boar's Head Brand come from sources other than Provisions.

32.     FB Co. sells its products to independent distributors who in turn sell them to delicatessens, grocery stores, supermarkets and other food markets for distribution to the public. Products sold under the Boar's Head Brands are distributed throughout much of the United States in distinctive red and black trucks bearing the Boar's Head Logo that resemble Frank Brunckhorst's original horse-drawn wagon.

33.     FB Co. owns the Boar's Head Brands, as it represented in its sworn submissions to the U.S. Patent and Trademark Office and as Provisions represents on its website. Until recently, FB Co. spent millions of dollars annually on advertising its products on radio and television, in print media, and in point-of-sale advertising, promoting the Boar's Head Brands.  Its point-of-sale advertising displays, which it makes available to retail stores that carry FB Co. products, include price markers, fliers, stickers, clocks, and display boards, among other things. Almost all of FB Co.'s advertising dollars have been spent promoting Provisions-manufactured products, despite the fact that products manufactured by other companies generate greater profits for FB Co.

34.     FB Co.'s independent distributors also spend millions of dollars each year on point-of-sale advertising materials, further promoting the Boar's Head Brands and increasing its good will.

35.     As with all LLCs, the managers of FB Co. owe fiduciary duties to the LLC and its members.  Moreover, FB Co. has an Operating Agreement (which has been signed by each of its members, including Defendants Frank Brunckhorst, Martin, and Barbara Brunckhorst) that governs FB Co.'s operations.  Pursuant to the Operating Agreement, Defendants Martin and Frank

- 11 -

Brunckhorst were designated as the "Managers" of the Company, and as such, were given "full and complete charge of all affairs of the Company." (Operating Agreement §§ 6.1(a), (b)). The Agreement explicitly authorizes Defendant Managers to, among other things, make capital expenditures, invest in securities, enter into contracts, maintain records, borrow funds, sell assets, retain professionals, and execute leases and purchase agreements, all on behalf of FB Co.

36.     Notwithstanding the broad powers granted to Defendant Managers, they are specifically proscribed from acting in contravention of the Operating Agreement. The Agreement imposes specific limitations on their authority designed to protect against the very abuse that has been occurring. In particular, the Agreement prohibits improper self-dealing by prohibiting FB Co. from entering into contracts with affiliates on terms that are less favorable than contracts with non-affiliates.

37.     The Operating Agreement provides, in pertinent part:

> Any Member, or any Affiliate of the Company or of any Member, may ... enter into an agreement with the Company to provide services to the Company in the ordinary course of business in connection with the operation of the business of the Company. Any such loans or agreements between the Company, on the one hand, and any Member, or any Affiliate of the Company, or of any Member, on the other hand, *shall be on terms no less favorable to the Company than those that would obtain in ordinary arm's-length transactions with non-Affiliates.*

(Operating Agreement § 6.8) (emphasis added).

38.     The Operating Agreement defines an affiliate as, among other things, any person or corporation under common control with another person or corporation, and any officer, director, or greater than 10% shareholder of such a corporation.

39.     Thus, Provisions, Defendants Frank Brunckhorst, Martin, and Barbara Brunckhorst are affiliates of FB Co. under the Operating Agreement and may not transact business

- 12 -

with FB Co. on terms less favorable to FB Co. than those the Company "would obtain in ordinary arm's-length transactions with non-Affiliates." In connection with agreeing to guarantee extensions of bank credit to Provisions, FB Co. formally acknowledged that Provisions is its affiliate.

**Defendants' Wrongful Diversion of Revenue to Provisions**

40. The current allocation of profits beginning in the early 1990's represents an astonishing departure from the historical operations of the businesses and from their relative revenue-earning capabilities. Previously, FB Co. earned considerably higher profits than Provisions, even though almost all of FB Co.'s profits were generated from Provisions-manufactured products. That profit allocation was in line with the relative profit-generating power of the assets owned by the two companies, particularly FB Co.'s ownership of the Boar's Head Brand.

41. Nonetheless, since the early 1990's and continuing through today, Defendant Managers, with the substantial assistance of Defendant Directors and Provisions, have engaged in a systematic campaign to siphon profits from FB Co. to Provisions. Under Defendant Managers' control, Provisions' profits have soared to more than three times that of FB Co. Such disproportionate profits are outrageous. Despite the fact that Provisions-manufactured products account for over 70% of FB Co.'s sales, the majority of FB Co.'s earnings for the last several years have been derived from products manufactured by third parties. All this, even though FB Co.'s Boar's Head Brand has never been stronger.

42. Contrary to Defendant Managers' and the controlling members' fiduciary duties and the requirements imposed by the Operating Agreement and New York law, Defendant Managers have caused FB Co. to distribute Provisions' products and allowed Provisions to use the Boar's Head Brands on terms that never would have obtained in an arm's-length relationship. This failure to operate FB Co. in the best interests of the Company and its members resulted from the

- 13 -

fact that FB Co. and Provisions are under the common control of Defendants Frank Brunckhorst, Martin, and Barbara Brunckhorst, who have benefited greatly, and on information and belief, plan to benefit even more so in the future, from the unfair related-party transactions in which they have been engaging.

43. No contract or licensing agreement governs the manufacturing-distribution relationship, the use of intellectual property, or any other dealings between FB Co. and Provisions. Thus, FB Co. is and has been completely free to purchase products manufactured by third parties at any time, and nothing has compelled FB Co. to purchase any amount of product manufactured by Provisions. FB Co. also could have discontinued Provisions' use of the Boar's Head Brand or charged a licensing fee for its use at any time. Had any such contract existed, it would have constituted an improper related party transaction based on the current allocation of revenue and profits between the companies.

44. Despite this freedom from any contractual constraints regarding the use of the Boar's Head Brand or the distribution of products, Defendant Managers have done nothing to maximize the profitability of FB Co. or capture the full value of its nationally-renowned brand. On information and belief, FB Co., under the direction of Defendant Managers, has not (a) sought to charge Provisions a licensing fee for the use of the Boar's Head Brand, (b) attempted to obtain products of comparable quality from sources other than Provisions for a lower price, (c) subjected its contracts to competitive bidding, or (d) otherwise sought to reduce the prices charged (or increase the fees paid) by Provisions.

45. Instead of obtaining a fair price for FB Co.'s licensing rights and services, Defendant Managers have abused their positions of control and violated the Operating Agreement to transfer wealth between the companies by artificially restricting the amount of revenue received

by FB Co. for the sale of Provisions' products. To accomplish this, Defendant Managers and

Provisions, with the knowledge and assistance of Defendant Directors, agreed to an arbitrarily-

determined "net income target" whereby FB Co. received a set percentage of sales regardless of the

profitability of the company. The net income target was set well below market rates.

  46.  As a consequence of this profit-siphoning device whereby Defendant

Managers allocated too little revenue to FB Co. for the sale of Provisions-manufactured products —

or in effect, overcharged FB Co. for Provisions' products — FB Co.'s profits have been reported at a

fraction of what they otherwise would have been in an arms-length transaction. On average, over

$40 million per year has been improperly diverted from FB Co. to Provisions through this revenue

allocation device.

  47.  FB Co. would never have established this business relationship with

Provisions, or allowed it to continue, if Defendant Managers did not dominate it. This obvious

point is demonstrated by the fact that FB Co. makes a significantly greater profit on goods

manufactured by third parties and sold under the Boar's Head Brands than it does on like goods

manufactured by Provisions and sold under the Boar's Head Brands. This arrangement is clearly

not in the best interests of FB Co.

  48.  Defendant Managers have failed to explore alternative arrangements despite

the fact that high-quality products could have been acquired by FB Co. for less than what Provisions

charged it. Indeed, the majority of FB Co. earnings derive from products manufactured by third

parties, despite the fact that the vast majority of FB Co.'s sales come from Provisions-manufactured

products.

  49.  In addition to setting inadequate transfer prices, Defendant Managers have

improperly allocated expenses between the companies, and set up affiliate companies with little or

no regard for the value of the brand or other value contributed to the business by FB Co. in order to shift earnings to Provisions. Defendant Managers have caused FB Co. to make expenditures designed solely to minimize Provisions' state taxes and further increase Provisions' post-tax profits, all with the knowledge and assistance of Provisions and Defendant Directors. For example, Defendant Managers caused FB Co. to establish shipping docks at each of Provisions' locations, assuming added expenses, solely to eliminate the shipping of Provisions' products to New York, and thereby eliminate their New York presence for tax purposes. Those tax savings result in Defendant Frank Brunckhorst earning more, on a post-tax basis, whenever Provisions, rather than FB Co., earns profits, despite his nearly equal ownership interest in the two companies. Further, Defendant Managers set up two companies, Prestige and Cousins, in ownership percentages equal to Provisions, and not FB Co., thereby giving Defendant Managers a greater ownership interest in companies that use the FB Co. distribution system to distribute third-party products.

50.    This improper allocation of profits has resulted in operating earnings of Provisions that greatly exceed those of competitors, while the profitability of FB Co. is markedly lower than that of Provisions. Based on returns on assets and earnings generated by comparable companies, much of the profit earned by the two companies is properly attributable to the very strong Boar's Head Brand. But despite the fact that Provisions openly acknowledges that the Boar's Head Brand is owned by FB Co., this crucial fact is ignored when revenues are allocated between the companies, resulting in operating margins that are completely out of sync with peer companies; indeed, Provisions' operating margin is over double the margin of comparable consumer food companies, while FB Co.'s margin for Provisions-manufactured products is less than half that of comparable companies.

51.   This wrongful diversion of assets from FB Co. to Provisions has been ongoing and continuous.  It continues each and every day that revenue and profits are improperly diverted from FB Co. to Provisions.

**Defendants' Misconduct Has Been Willful**

52.   Defendant Managers have long run FB Co. as a private fiefdom and have intentionally engaged in self-dealing with the object of enriching themselves personally and of directing profits away from FB Co., where Stravitz, the only owner who is not a descendent of the founders, is a member.  In or around the Summer of 1999, Stravitz, who, like Plaintiff, had a greater ownership interest in FB Co. than in Provisions, was informed by a company employee that FB Co.'s pre-tax profits for 1998 would be about $5 million, which was about $5 million lower than the profit level that it reportedly had earned in prior years.  At or about that time, Stravitz made inquiries with Defendant Managers and others and expressed his views that something "fishy" was going on with regard to the revenue allocation between FB Co. and Provisions.

53.   In response to those inquiries and in an effort to forestall any possible complaints that Stravitz might make, Defendant Managers met with company counsel to determine whether as managers of FB Co. they owed any duties to its members, including Stravitz.  When Defendant Martin expressed his view at the meeting that he could do whatever he wanted based on his broad powers as a manager and his large ownership interest in FB Co., he was properly advised by counsel, Weil, Gotshal & Manges LLP ("Weil Gotshal"), that he owed fiduciary duties to the LLC and its members, as well as contractual obligations under the Operating Agreement, and that he had to act in accordance with those obligations.

54.   Despite having been expressly advised by Weil Gotshal of their fiduciary duties and contractual obligations at that meeting, Defendant Managers continued to act in total disregard of them.  Rather than correct their behavior and operate FB Co. in an appropriate manner,

- 17 -

Defendant Managers shifted $5 million from Provisions to FB Co. for fiscal 1998 so that FB Co.

would achieve a profit of $10 million and Stravitz would be appeased. Subsequently, Defendant

Managers continued to intentionally divert funds from FB Co.

## CLAIMS FOR RELIEF

## ALLEGATIONS COMMON TO ALL DERIVATIVE CLAIMS

55.    Plaintiff owns in excess of 20% of FB Co., and will fairly and adequately

represent its interests and the interests of its other members in enforcing the rights asserted herein.

56.    Defendant Managers have engaged in intentional wrongdoing and self-

dealing through which they benefited financially. They have stood at both sides of the transactions

at issue and are interested Managers whose conduct violates New York law. They were fully aware

that the terms upon which FB Co. did business with Provisions were grossly unfair and unlike any

that they would obtain in any arm's-length transaction.

57.    No demand has been made upon Defendant Managers to institute this action

since any such demand would be a futile and useless act. Defendant Managers control FB Co. and

engaged in the wrongdoing at issue. Thus, they could not exercise informed, independent, objective

judgment in determining whether to bring this action or to prosecute it vigorously because, among

other things, any such lawsuit would require them to sue themselves, either individually or in their

capacities as officers and managers of FB Co. and as officers and directors of Provisions.

### FIRST CLAIM FOR RELIEF
### Breach of Fiduciary Duty
### (as against Defendant Managers)

58.    Plaintiff incorporates by reference the allegations set forth in paragraphs 1

through 57 of this Complaint as if fully set forth herein.

59.    This claim is asserted by Plaintiff derivatively on behalf of FB Co. against

Defendant Managers.

- 18 -

60.    Under New York law, Defendant Managers owed a fiduciary duty to FB Co. and its members. This duty is reinforced by § 6.8 of the Operating Agreement, which prohibits the precise self-dealing Defendant Managers have employed to loot FB Co.

61.    Defendant Managers have breached their fiduciary duties by causing FB Co. to enter into agreements and conduct business with affiliate Provisions, a related party, on terms and conditions that were less favorable to FB Co. than it would have obtained in ordinary arms-length transactions with non-affiliates. Among other things, FB Co. did not charge, or did not charge a sufficient, license fee to Provisions for the use of the valuable Boar's Head Brands; it did not receive sufficient revenue for its distribution services; and/or it paid Provisions higher prices for its products than it would otherwise have paid to a third party.

62.    Defendant Managers' conduct constituted improper self-dealing, since they have ownership interests in both companies. Defendant Managers collectively held a greater ownership interest in Provisions than in FB Co. and/or benefited financially whenever profits were diverted from FB Co. to Provisions.

63.    As a consequence of Defendant Managers' breach of their fiduciary duties, FB Co. suffered losses of several hundred million dollars. Moreover, based on historical earnings and growth rates, the present value of the losses expected in the future, unless the misallocation is corrected, amounts to an additional several hundred million dollars.

### SECOND CLAIM FOR RELIEF
### Aiding and Abetting Breach of Fiduciary Duty
### (as against Provisions and Defendant Directors)

64.    Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 63 of this Complaint as if fully set forth herein.

65.    This claim is asserted by Plaintiff derivatively on behalf of FB Co. against Provisions and Defendant Directors.

- 19 -

66. Defendant Managers breached their fiduciary duties to FB Co. Provisions and Defendant Directors had knowledge of Defendant Managers' breaches of their fiduciary duties to FB Co., as described herein, participated in them to benefit Provisions and themselves, and were aware that FB Co. suffered damages as a result.

67. Provisions and Defendant Directors substantially assisted Defendant Managers' breach of fiduciary duty by assisting in the diversion of FB Co.'s funds. This assistance included, among other things, Provisions' uncompensated or under-compensated use of the Boar's Head Brands owned by FB Co.; its failure to pay FB Co. the fair-market value of its distribution services; its allocation to FB Co. of a significantly below-market percentage of revenue from the sale of Provisions-manufactured products; and/or its overcharging FB Co. for its products.

68. As a consequence of Provisions and Defendant Directors aiding and abetting Defendant Managers' breach of fiduciary duty, FB Co. has suffered losses of several hundred million dollars. Moreover, based on historical earnings and growth rates, the present value of the losses expected in the future, unless the misallocation is corrected, amounts to an additional several hundred million dollars.

### THIRD CLAIM FOR RELIEF
### Breach of the FB Co. Operating Agreement
### (as against Defendant Managers)

69. Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 68 of this Complaint as if fully set forth herein.

70. This claim is asserted by Plaintiff in his individual capacity.

71. Provisions, Defendant Managers, and Defendant Directors are affiliates of FB Co. pursuant to the terms of the FB Co. Operating Agreement.

72. Plaintiff, Defendant Managers, and Defendant Directors are signatories to the Agreement, a validly formed contract. Plaintiff has satisfied all obligations, commitments and

responsibilities under the Operating Agreement and fully performed in accordance with the terms therein.

73.    Defendant Managers have violated the Operating Agreement by causing FB Co. to enter into agreements and conduct business with affiliate Provisions on terms and conditions that were less favorable to FB Co. than it would have obtained in arms-length transactions with non-affiliates. In particular, FB Co. did not charge, or did not charge a sufficient, license fee to Provisions for the use of the valuable Boar's Head Brands; it did not receive sufficient revenue for its distribution services; and/or it paid Provisions higher prices for its products than it otherwise would have paid to third parties.

74.    Such wanton self-dealing also violated the Agreement's requirement that Defendant Manager's consider all affiliate arrangements to be in the best interests of FB Co.

75.    As a consequence of Defendant Managers' violation of the Operating Agreement, Plaintiff has suffered losses of millions of dollars. Moreover, based on historical earnings and growth rates, the present value of the losses expected in the future, unless the misallocation is corrected, amounts to additional millions of dollars.

## FOURTH CLAIM FOR RELIEF
### Waste
### (as against Defendant Managers)

76.    Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 75 of this Complaint as if fully set forth herein.

77.    This claim is asserted by Plaintiff derivatively on behalf of FB Co. against Defendant Managers.

78.    Defendant Managers owed a fiduciary duty to FB Co. and its members.

79.    Defendant Managers engaged in an ongoing course of wasting FB Co.'s assets. Defendant Managers wrongfully caused FB Co. to be allocated a percentage of revenue

from the sale of products manufactured by Provisions that was lower than would have been allocated to it in an arm's-length transaction. This artificial restriction of revenue had the same economic effect as Provisions overcharging FB Co. for its products. FB Co.'s payment of these unnecessary and unreasonable costs constituted a waste of its assets.

80.    As a consequence of Defendant Managers' waste, FB Co. suffered losses of several hundred million dollars. Moreover, based on historical earnings and growth rates, the present value of the losses expected in the future, unless the misallocation is corrected, amounts to an additional several hundred million dollars.

### FIFTH CLAIM FOR RELIEF
#### Aiding and Abetting Waste
#### (as against Provisions and Defendant Directors)

81.    Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 80 of this Complaint as if fully set forth herein.

82.    This claim is asserted by Plaintiff derivatively on behalf of FB Co. against Provisions and Defendant Directors.

83.    Defendant Managers wasted FB Co.'s assets. Provisions and Defendant Directors had knowledge of and participated in Defendant Managers' waste of FB Co.'s assets, as described herein, to benefit Provisions and themselves. Provisions and Defendant Directors were aware that FB Co. suffered damages as a result.

84.    Provisions and Defendant Directors substantially assisted in Defendant Managers' waste by assisting in the diversion of FB Co.'s funds. This assistance included, among other things, Provisions' uncompensated or under-compensated use of the Boar's Head Brands owned by FB Co.; its failure to pay FB Co. the fair-market value of its distribution services; its allocation to FB Co. of a significantly below-market percentage of revenue from the sale of Provisions-manufactured products; and/or its overcharging FB Co. for its products.

85.    As a consequence of Provisions and Defendant Directors aiding and abetting Defendant Managers' waste of FB Co.'s assets, FB Co. has suffered losses of several hundred million dollars.  Moreover, based on historical earnings and growth rates, the present value of the losses expected in the future, unless the misallocation is corrected, amounts to an additional several hundred million dollars.

### SIXTH CLAIM FOR RELIEF
#### Unjust Enrichment
#### (as against Defendant Managers, Provisions, and Defendant Directors)

86.    Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 85 of this Complaint as if fully set forth herein.

87.    This claim is asserted by Plaintiff derivatively on behalf of FB Co. against Defendant Managers, Provisions, and Defendant Directors.

88.    Defendant Managers, Provisions, and Defendant Directors were unjustly enriched whenever Provisions was allocated revenue that rightfully belonged to FB Co. for Provisions' use of the Boar's Head Brands, and for the distribution services that FB Co. provided for Provisions-manufactured products.

89.    Equity and good conscience require Defendant Managers, Provisions and/or Defendant Directors to repay FB Co. the amount of the benefit conferred to Defendant Managers, Provisions and/or Defendant Directors since the funds were diverted to them through self-dealing designed to enrich them.

90.    As a consequence of Provisions' unjust enrichment, FB Co. has suffered losses of several hundred million dollars.  Moreover, based on historical earnings and growth rates, the present value of the losses expected in the future, unless the misallocation is corrected, amounts to an additional several hundred million dollars.

### SEVENTH CLAIM FOR RELIEF
#### Money Had and Received
#### (as against Provisions)

91.  Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 90 of this Complaint as if fully set forth herein.

92.  This claim is asserted by Plaintiff derivatively on behalf of FB Co. against defendant Provisions.

93.  Provisions received money that rightfully belonged to FB Co. for Provisions' use of the Boar's Head Brands and for the distribution services that FB Co. provided it in connection with the sale of Provisions-manufactured products.

94.  Provisions benefited from FB Co.'s payment for products in excess of their fair and reasonable value to the detriment of FB Co.

95.  Under principles of equity and good conscience, Provisions should not be permitted to keep the overpaid money since the funds were diverted through self-dealing to enrich Provisions.

96.  As a consequence, FB Co. suffered losses of several hundred million dollars. Moreover, based on historical earnings and growth rates, the present value of the losses expected in the future, unless the misallocation is corrected, amounts to an additional several hundred million dollars.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff Eric Bischoff demands the following relief:

97.    Judgment against defendants in an amount to be determined at trial, as well as interest, attorney's fees, costs, and such other and further relief as this Court deems just and proper.

98.    An order appointing Eric Bischoff as a manager of FB Co.

99.    An order that Defendant Managers are barred from indemnification from FB Co. because they (a) acted in bad faith or with gross negligence, or otherwise engaged in intentional misconduct that was material to the judgment; or (b) personally gained a financial profit or other advantage to which they were not legally entitled.

100.   An order permanently enjoining Defendants from engaging in any further wrongful diversion of revenue from FB Co. to Provisions, waste of FB Co.'s assets, or breaches of duties owed to FB Co. or its members.

Dated: New York, New York
       December 5, 2005

SCHULTE ROTH & ZABEL LLP

By:  _____
     Martin L. Perschetz
     Michael E. Swartz

919 Third Avenue
New York, New York 10022
(212) 756-2000

*Attorneys for Plaintiff Eric Bischoff*

- 25 -

# EXHIBIT B

# AFFIDAVIT OF SERVICE

| | | |
|---|---|---|
| **State of NEW YORK** | **County of NEW YORK** | **Supreme Court** |

Index Number: 604265/05
Date Filed: 12/5/2005

Plaintiff:
**ERIC BISCHOFF, et al**

vs.

Defendant:
**BOAR'S HEAD PROVISIONS CO., INC., et al**

For:
Michael E. Swartz
Schulte Roth & Zabel LLP

Received by Rapid & Reliable Attorney Service, Inc. on the 8th day of December, 2005 at 9:21 am to be served on **BOAR'S HEAD PROVISIONS CO., INC., 400 SARASOTA QUAY, SARASOTA, FLORIDA 34236.**

I, Peter Stolberg, being duly sworn, depose and say that on the **8th day of December, 2005** at **10:30 am, I:**

SERVED the within named **CORPORATION** by delivering a true copy of the **SUMMONS AND COMPLAINT** with the date and hour of service endorsed thereon by me to BLAIR WALDICK as C.F.O. of the within named corporation, in compliance with state statutes.

**Description** of Person Served: Age: 55, Sex: M, Race/Skin Color: W, Height: 6'2", Weight: 190, Hair: Brn, Glasses: N

I certify that I am over the age of 18, have no interest in the above action, and am a Certified Process Server in good standing in the judicial circuit in which the process was served.

Peter Stolberg
#0001

Subscribed and Sworn to before me on the 8th day of
December, 2005 by the affiant who is personally known to
me.

NOTARY PUBLIC

**Rapid & Reliable Attorney Service, Inc.**
**160 Broadway**
**Suite 603**
**New York, NY  10038**
**(866) 227-1877**
Our Job Serial Number: 2005009597

SHELLY HUFFMAN
MY COMMISSION # DD 306709
EXPIRES: April 28, 2008
Bonded Thru Budget Notary Services

Copyright © 1992-2005 Database Services, Inc. - Process Server's Toolbox V5.5j

# AFFIDAVIT OF SERVICE

State of NEW YORK                    County of NEW YORK                    Supreme Court

Index Number: 604265/05
Date Filed: 12/5/2005

Plaintiff:
**ERIC BISCHOFF, et al**

vs.

Defendant:
**BOAR'S HEAD PROVISIONS CO., INC., et al**

For:
Michael E. Swartz
Schulte Roth & Zabel LLP

Received by Rapid & Reliable Attorney Service, Inc. on the 8th day of December, 2005 at 9:21 am to be served on **FRANK BRUNCKHORST, III, 1400 LAUDE LANE, SARASOTA, FLORIDA 34231.**

I, Peter Stolberg, being duly sworn, depose and say that on the **8th day of December, 2005 at 12:00 pm, I:**

**Individually Served** the within named person with a true copy of the **SUMMONS AND COMPLAINT** with the date and hour endorsed thereon by me, pursuant to state statutes.

**Additional Information pertaining to this Service:**
CORRECT STREET NAME IS LA DUE.

**Description** of Person Served: Age: 40, Sex: M, Race/Skin Color: W, Height: 5'11", Weight: 175, Hair: Brn, Glasses: N

I certify that I am over the age of 18, have no interest in the above action, and am a Certified Process Server in good standing in the judicial circuit in which the process was served.

Subscribed and Sworn to before me on the 8th day of December, 2005 by the affiant who is personally known to me.

_____
NOTARY PUBLIC

Peter Stolberg
#0001

**Rapid & Reliable Attorney Service, Inc.**
160 Broadway
Suite 603
New York, NY 10038
(866) 227-1877
Our Job Serial Number: 2005009600

SHELLY HUFFMAN
MY COMMISSION # DD 306709
EXPIRES: April 28, 2008
Bonded Thru Budget Notary Services

Copyright © 1992-2005 Database Services, Inc. - Process Server's Toolbox V5.5j

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------X

ERIC BISCHOFF, individually and as a member of Frank Brunckhorst | Index No: 604265 / 2005
Co., L.L.C. and in the right of and on behalf of Frank Brunckhorst |
Co., L.L.C., |
                                Plaintiff, |
    -against- | **AFFIDAVIT OF SERVICE**
|
BOAR'S HEAD PROVISIONS CO., INC. and FRANK |
BRUNCKHORST III and ROBERT S. MARTIN, individually and as |
managers and members of Frank Brunckhorst Co., L.L.C., and as |
directors and officers of Boar's Head Provisions Co., Inc., and |
BARBARA BRUNCKHORST, individually and as a member of |
Frank Brunckhorst Co., L.L.C. as director of Boar's Head |
Provisions Co., Inc, |
                           Defendants, |
    -and- |
FRANK BRUNCKHORST CO., L.L.C., |
                 Nominal Defendant. |
-------------------------------------------------------------------X

STATE OF NEW YORK      )
                         ) ss.:
COUNTY OF NEW YORK  )

JUAN ROLDAN, being duly sworn, deposes and says:

1.      That I am not a party to this action, am over eighteen years of age and reside in the State of New Jersey;

2.      That on December 08, 2005, at approximately 7:48 p.m., I served by hand, by personally delivering to and leaving with, a true and correct copy of the following documents: **SUMMONS with Index Number and Date Purchased Endorsed Thereon, and COMPLAINT**, all upon **ROBERT S. MARTIN**, (an Individual), by Substituted Service, via Ms. Tina Martin, who identified herself as the "Ex-Wife" of Robert S. Martin, and who was served on behalf of Robert S. Martin, individually. Ms. Tina Martin who is known and known to be someone of suitable age and discretion, who indicated upon inquiry, that she nor Robert S. Martin are neither in Military Service nor dependant upon anyone within Military Service, which service was effected at the actual place of residence indicated below:

                    ROBERT S. MARTIN
                    35 Crooked Mile Road / Private House
                    Darrien, CT 06820

3.      **Ms. Tina Martin** can be best described as:

Female – White skin – Brown hair – Brown eyes - Approximately 44 – 54 years of age - 5'4" – 5'7" and 100 - 125 Lbs.

4.      On December 09, 2005, I deposited in a United States Post Office within New York State, via Regular First Class Mail true copies of the abovementioned documents, properly enclosed and sealed in a post-paid envelope bearing the legend 'Personal and Confidential'. The envelope did not indicate on the outside thereof, by return address or otherwise, that the communication is from an attorney or concerns an action against the person to be served, and was addressed to ROBERT S. MARTIN at the address noted above.

Dated:  December 09, 2005
         New York, New York

                              JENIQUE TORRES
                            Notary Public, State of New York      JUAN ROLDAN
                            No. 01TO6289542             License No.: 0983113
                            Qualified in New York County
                            Commission Expires May 12, 2007
Sworn to before me on this the 09th day of December 2005

NOTARY PUBLIC

RAPID & RELIABLE ATTORNEY SERVICE, INC.
-A FULL-SERVICE LITIGATION SUPPORT CORPORATION-

                                              POST OFFICE BOX 858
                                            NEW YORK, NEW YORK 10268
                                            212-608-1555

*'We've built our reputation on your satisfaction'*

# AFFIDAVIT OF SERVICE

State of NEW YORK | County of NEW YORK | Supreme Court

Index Number: 604265/05
Date Filed: 12/5/2005

Plaintiff:
**ERIC BISCHOFF, et al**

vs.

Defendant:
**BOAR'S HEAD PROVISIONS CO., INC., et al**

For:
Michael E. Swartz
Schulte Roth & Zabel LLP

Received by Rapid & Reliable Attorney Service, Inc. on the 8th day of December, 2005 at 9:21 am to be served on **FRANK BRUNCKHORST CO., L.L.C. 400 SARASOTA QUAY, SARASOTA, FLORIDA 34236.**

I, Peter Stolberg, being duly sworn, depose and say that on the **8th day of December, 2005** at **10:30 am, I:**

SERVED the within named **CORPORATION** by delivering a true copy of the **SUMMONS AND COMPLAINT** with the date and hour of service endorsed thereon by me to BLAIR WALDICK as C.F.O. of the within named corporation, in compliance with state statutes.

**Description** of Person Served:  Age: 55,  Sex: M,  Race/Skin Color: W,  Height: 6'2",  Weight: 190,  Hair: Brn,  Glasses: N

I certify that I am over the age of 18, have no interest in the above action, and am a Certified Process Server in good standing in the judicial circuit in which the process was served.

Subscribed and Sworn to before me on the 8th day of
December, 2005 by the affiant who is personally known to
me.

NOTARY PUBLIC

SHELLY HUFFMAN
MY COMMISSION # DD 306709
EXPIRES: April 28, 2008
Bonded Thru Budget Notary Services

Peter Stolberg
#0001

**Rapid & Reliable Attorney Service, Inc.**
160 Broadway
Suite 603
New York, NY  10038
(866) 227-1877
Our Job Serial Number: 2005009598

Copyright © 1992-2005 Database Services, Inc. - Process Server's Toolbox V5.5j

# EXHIBIT C

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

———————————————————————x
ERIC BISCHOFF, individually and as a member
of Frank Brunckhorst Co., L.L.C. and in the right
of and on behalf of Frank Brunckhorst Co., L.L.C.,

                       Plaintiff,

              – against –

BOAR'S HEAD PROVISIONS CO., INC. and FRANK
BRUNCKHORST III and ROBERT S. MARTIN,
individually and as managers and members of Frank
Brunckhorst Co., L.L.C. and as directors and officers
of Boar's Head Provisions Co., Inc., and BARBARA
BRUNCKHORST, individually and as a member of
Frank Brunckhorst Co., L.L.C. and as a director of
Boar's Head Provisions Co., Inc.,

                      Defendants,

              -and-

FRANK BRUNCKHORST CO., L.L.C.,

                 Nominal Defendant.

———————————————————————x

: Index No.
  604265/05

: **STIPULATION**

          IT IS HEREBY STIPULATED, CONSENTED AND AGREED, by

counsel for plaintiff and defendants, as follows:

        1.     The time for defendants Boar's Head Provisions Co., Inc., Frank

Brunckhorst III, Robert S. Martin, Barbara Brunckhorst, and Frank Brunckhorst Co.,

L.L.C. to appear, to answer, or otherwise to move with respect to the Complaint be, and

the same hereby is, extended to and including February 17, 2006.

        2.     Weil, Gotshal & Manges LLP ("WG&M") agrees to accept service

of the summons and complaint in this action on behalf of all defendants.

NY1:\1366782\02\7J@M602!.DOC\46335.0001

3.    The time for plaintiff to return any and all property of defendants Frank Brunckhorst Co., L.L.C. and/or Boar's Head Provisions Co., Inc. that is in his possession, custody and/or control be, and the same hereby is, extended to and including January 23, 2006, without prejudice to any rights and remedies of plaintiff and said defendants.

4.    By entering into this stipulation, plaintiff does not consent to WG&M acting as defendants' counsel in this action, and he expressly reserves his rights to seek disqualification of WG&M based on the advocate-witness rule, conflict of interest or any other basis that might serve to disqualify WG&M as defendants' counsel. By entering into this stipulation, neither defendants nor WG&M concede that there is any basis for disqualification.

5.    This Stipulation shall not constitute an appearance in this action by defendants.

6.    This Stipulation may be executed by facsimile, and may be filed with the Court ex parte and without notice.

Dated: New York, New York
December 29, 2005

SCHULTE ROTH & ZABEL LLP

Martin L. Perschetz, Esq.
Michael Swartz, Esq.
919 Third Avenue
New York, NY 10022
(212) 756-2000
Attorneys for Plaintiff

WEIL, GOTSHAL & MANGES LLP

Peter D. Isakoff, Esq.
767 Fifth Avenue
New York, New York 10153
212-310-8000

Attorneys for Defendants

NY1:\1366782\02\XT@M602!.DOC\46395.0001

2