UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
ERIC BISCHOFF, individually and as a member    :
of Frank Brunckhorst Co., L.L.C., and in the right
of and on behalf of Frank Brunckhorst Co., L.L.C.,   :

            Plaintiff,             :

          -against-         :   Case No.
                               06 CV 00106 (DC)(TK)

BOAR'S HEAD PROVISIONS CO., INC., and   :
FRANK BRUNCKHORST III and  ROBERT S.
MARTIN, individually and as managers and   :
members of Frank Brunckhorst Co., L.L.C., and
as directors and officers of Boar's Head Provisions   :
Co., Inc., and BARBARA BRUNCKHORST,
individually and as a member of Frank Brunckhorst   :
Co., L.L.C., and as a director of Boar's Head
Provisions Co., Inc.,   :

         Defendants,        :

         -and-        :

FRANK BRUNCKHORST CO., L.L.C.,   :

        Nominal Defendant.     :
-------------------------------------------------------------------x

## MEMORANDUM OF LAW (I) IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT, AND (II) IN OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR REMAND

WEIL, GOTSHAL & MANGES LLP
Peter D. Isakoff (PI-1614)
Mitchell D. Haddad (MH-7782)
Jared R. Friedmann (JF-2004)
767 Fifth Avenue
New York, New York  10153
Telephone:   212-310-8000
Facsimile:    212-310-8007
     -and-
GOLENBOCK EISEMAN ASSOR
BELL & PESKOE LLP
Martin S. Hyman (MH-4131)
437 Madison Avenue
New York, New York  10022
Telephone:   212-907-7360
Facsimile:    212-754-0777

Attorneys for Defendants and Nominal Defendant

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................ 1

ARGUMENT........................................................................................... 4

POINT I

MEMBERS OF A NEW YORK LLC CANNOT BRING
DERIVATIVE CLAIMS ON THE LLC'S BEHALF, AS A
MATTER OF LAW ............................................................................. 4

    1. The Unanimous New York Case Law Precludes
       Plaintiff's Claims ...................................................................... 4

    2. The New York State Legislature Considered And
       Rejected Statutory Provisions Permitting Members Of
       New York LLCs To Bring Derivative Actions On Its
       Behalf ...................................................................................... 6

    3. Plaintiff Has Ample Remedies Without Derivative
       Claims ................................................................................... 10

POINT II

PLAINTIFF'S BREACH OF CONTRACT CLAIM IS FATALLY
DEFECTIVE ON ITS FACE.................................................................. 12

POINT III

PLAINTIFF'S CROSS-MOTION SHOULD BE DENIED.................... 16

CONCLUSION........................................................................................ 18

i

# TABLE OF AUTHORITIES

## FEDERAL CASES

**Page**

Alesayi Beverage Corp. v. Canada Dry Corp., 947 F. Supp. 658 (S.D.N.Y. 1996) ..........14

Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc., 373 F.3d 296 (2d Cir. 2004)
    *cert denied* 125 S. Ct. 1704 (2005) ............................................................................17

Cabrini Dev. Council, CDC v. LCA-Vision, Inc., 197 F.R.D. 90 (S.D.N.Y. 2000),
    *vacated in part*, 292 F.3d 134 (2d Cir. 2002) ............................................................5, 6

Citadel Equity Fund Ltd. v. Aquila, Inc., 371 F. Supp. 2d 510 (S.D.N.Y. 2005)..............12

Coca-Cola Bottling Co. of Elizabethtown, Inc. v. Coca-Cola Co., 696 F. Supp. 57
    (D.Del. 1988) ................................................................................................................14

In re Colonial Ltd. P'ship Litig., 854 F. Supp. 64 (D.Conn. 1994) ............................. 14-15

Curtis Publ'g Co. v. Sheridan, Jr., 53 F.R.D. 642 (S.D.N.Y. 1971) ........................... 13-14

Dugar v. Coughlin, 613 F. Supp. 849 (S.D.N.Y. 1985)......................................................15

Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938)................4

Ernst & Ernst v. Hochfelder, 425 U.S. 185, 105 S.Ct. 638, 83 L. Ed. 2d
    556(1976).................................................................................................................... 9-10

Esquire Radio & Elecs., Inc. v. Montgomery Ward & Co., Inc., 804 F.2d 787 (2d
    Cir. 1986) ......................................................................................................................14

For Children, Inc. v. Graphics Int'l Inc., 352 F. Supp. 1280 (S.D.N.Y. 1972) ................13

Garcia v. U.S., 469 U.S. 70, 105 S. Ct. 479, 83 L. Ed. 2d 472 (1984) ................................9

Harry Fox Agency, Inc. v. Mills Music, Inc., 543 F. Supp. 844 (S.D.N.Y. 1982),
    *rev'd*, 720 F.2d 733 (2d Cir. 1983), *rev'd*, Mills Music v. Snyder, 469 U.S.
    153, 105 S.Ct. 638, 83 L. Ed. 2d 556 (1985)........................................................... 9-10

Haymes v. Columbia Pictures Corp., 16 F.R.D. 118 (S.D.N.Y. 1954) ............................17

Hill v. Delta Int'l Mach. Corp., 286 F. Supp. 2d 427 (S.D.N.Y. 2005)............................17

Klebanow v. New York Prod. Exch., 344 F.2d 294 (2d Cir. 1965)....................................5

**Page**

Lavin v. Lavin, 182 F.2d 870 (2d Cir. 1950)....................................................................17

Lerner v. Forster, 240 F. Supp. 2d 233 (E.D.N.Y. 2003) .................................................14

Manes Org., Inc. v. Standard Dyeing and Finishing Co., 472 F. Supp. 687
(S.D.N.Y. 1979)..........................................................................................................13

March v. United States, 506 F.2d 1306 (D.C.Cir. 1974) ...................................................10

McCaughn v. Hershey Chocolate Co., 283 U.S. 488, 51 S. Ct. 510, 75 L. Ed.
1183 (1931)..................................................................................................................10

Mills Music v. Snyder, 469 U.S. 153, 105 S.Ct. 638, 83 L. Ed. 2d 556 (1985) ...............10

Nachman Corp. v. Pension Ben. Guar. Corp., 446 U.S. 359, 100 S. Ct. 1723, 64
L. Ed. 254 (1980) ..........................................................................................................9

Navarro Savs. Ass'n v. Lee, 446 U.S. 458, 100 S. Ct. 1779, 64 L. Ed. 2d 425
(1980)..........................................................................................................................16

N. Am. Leisure Corp. v. A & B Duplicators LTD., 468 F.2d 695 (2d Cir. 1972).............13

PT Kaltim Prima Coal v. AES Barbers Point, Inc., 180 F. Supp. 2d 475 (S.D.N.Y.
2001) ...........................................................................................................................15

Pampillonia v. RJR Nabisco, Inc., 138 F.3d 459 (2d Cir. 1998) .......................................16

Thayer v. Dial Indus. Sales, Inc., 85 F. Supp. 2d 263 (S.D.N.Y. 2000).................... 12-13

Travelers Ins. Co. v. 633 Third Assocs, 14 F.3d 114 (2d Cir. 1994)...............................4, 6

United States v. St. Paul, Minneapolis & Manitoba Ry. Co., 247 U.S. 310, 38
S.Ct. 525, 62 L.Ed. 1130...............................................................................................8

VKK Corp. v. Nat'l Football League, 244 F.3d 114 (2d Cir. 2001).................................13

WM. H. Wise & Co. v. Rand McNally & Co., 195 F. Supp. 621 (S.D.N.Y. 1961)..........14

Weber v. King, 110 F. Supp. 2d 124 (E.D.N.Y. 2000)...................................................5, 6

# STATE CASES

**Page**

Back O'Beyond, Inc. v. Tel. Enters., Inc., 76 A.D.2d 897, 429 N.Y.S.2d 250 (2d Dep't 1980) ................................................................................................14

Farm Automation Corp. v. Senter, 84 A.D.2d 757, 443 N.Y.S.2d 765 (2d Dep't 1981) ................................................................................................14

Fesseha v. TD Waterhouse Investor Servs., Inc., 305 A.D.2d 268, 761 N.Y.S.2d 22 (1st Dep't 2003) ................................................................................15

Hoffman v. Unterberg, 9 A.D.3d 386, 780 N.Y.S.2d 617 (2d Dep't 2004) ........................4

Lio v. Zhong, No. 600455/05, 2006 WL. 37044, 2006 N.Y. Slip. Op. 50016 (U) (Sup. Ct. N.Y. Co. Jan. 6, 2006) .........................................................4, 8, 10

Majewski v. Broadalbin-Perth Cent. Sch. Dist., 91 N.Y.2d 577, 673 N.Y.S.2d 966 (1998) .................................................................................................8

Murphy v. Am. Home Prods. Corp., 58 N.Y.2d 293, 461 N.Y.S.2d 232 (1983) ..............15

Nathanson v. Nathanson, 20 A.D.3d 403, 799 N.Y.S.2d 83 (2d Dep't 2005)...................10

Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Xerox Corp., 807 N.Y.S.2d 344, 2006 N.Y. N.Y. Slip Op. 00004 (1st Dep't 2006) .......................................15

People v. Korkala, 99 A.D.2d 161, 472 N.Y.S.2d 310 (1st Dep't 1984) ............................8

Robinson v. Smith, 3 Paige Ch. 222 (N.Y. Ch. 1832) ........................................................8

Schindler v. Niche Media Holdings, LLC, 1 Misc.3d 713, 772 N.Y.S.2d 781 (Sup. Ct. N.Y. Co. 2003) ..................................................................4, 8

Teig v. Suffolk Oral Surgery Assocs., 2 A.D.3d 836, 769 N.Y.S.2d 599 (2d Dep't 2003) ................................................................................................13

Woollcott v. Shubert, 217 N.Y. 212 (1916)........................................................................8

## FEDERAL STATUTES

Page

Fed. R. Civ. Proc. 12(b)(6) ...................................................................................1

28 U.S.C. § 1332................................................................................................17

28 U.S.C. § 1447..................................................................................................1

28 U.S.C. § 1652..................................................................................................4

## NEW YORK STATE STATUTES

McKinney's New York Limited Liability Company Law § 409.......................................11

McKinney's New York Limited Liability Company Law § 411.......................................11

McKinney's New York Limited Liability Company Law § 417............................... 10-11

## MISCELLANEOUS

James R. Burkhard, LLC Member and Limited Partner Breach of Fiduciary Duty
        Claims: Direct or Derivative Actions, 7 J. Small and Emerging Bus. L. (2003).........10

16 Moore's Federal Practice § 107.14 (3d ed. 2002).........................................................16

Pub. Hearing on Ltd. Liab. Co. Legis. Before the Assemb. Standing Comms. on
        Judiciary and Corps., Auths. & Comm'ns (June 11, 1992) ...........................................7

2A Norman J. Singer, Statutes and Statutory Construction § 48A:11 (6th ed.
        2000) ........................................................................................................................9

Defendants Boar's Head Provisions Co., Inc. ("Provisions"), Frank Brunckhorst III, Robert S. Martin and Barbara Brunckhorst, and "nominal defendant" Frank Brunckhorst Co., L.L.C., respectfully submit this Memorandum of Law (i) in further support of their motion to dismiss the Complaint of plaintiff Eric Bischoff pursuant to Federal Rule of Civil Procedure 12(b)(6), and (ii) in opposition to plaintiff's cross-motion to remand pursuant to 28 U.S.C. § 1447.

## PRELIMINARY STATEMENT

Prior to 1994, New York limited liability companies ("LLC") did not exist. To provide the legal framework for the creation of such entities, the New York State Legislature enacted the New York Limited Liability Company Law ("NYLLCL"). Unlike the enabling statutory schemes for other legislatively spawned entities (such as corporations and limited partnerships), the NYLLCL contains no provision permitting LLC members to bring a derivative action on its behalf. While the Legislature initially contemplated including a proposed Article IX to the NYLLCL (which would have expressly provided for member derivative actions), it then deliberately omitted that article from the enacted statute.

Since the NYLLCL became law, every New York State court decision that has addressed the issue of whether an LLC member can bring a derivative action has squarely held that no such right exists. Plaintiff nevertheless seeks to have this Court, sitting in diversity, ignore the New York Legislature's mandate and all extant decisions of the New York state courts (including one unanimous appellate court) and recognize an LLC member's "common law" derivative claim, based on two federal decisions that

predated -- and therefore did not have the benefit of -- the New York state courts' guidance

on this pure issue of state law.  This would be an error.

Plaintiff's suggestion that deleterious effects will flow as the result of

"unchecked" LLCs and that he will be left without a remedy if his derivative claims are

dismissed is a flagrant red herring.  It is perfectly obvious that plaintiff <u>would</u> have an

individual damages remedy if his allegations were true.  The difference between what he

has and what he is seeking is that he is limited to seeking recovery for his <u>own</u> damages

rather than for all purported damages to the LLC were he permitted to sue derivatively.

Indeed, LLC members (like plaintiff) have multiple individual remedies

available under the NYLLCL for any breaches of fiduciary duty owed to them by LLC

managers.  In addition, plaintiff himself asserts he has an individual right to breach of

contract damages under the Operating Agreement of Frank Brunckhorst Co., L.L.C. ("FB

LLC").  While defendants believe plaintiff's Complaint does not state a viable breach of

contract claim under the FB LLC Operating Agreement ("Operating Agreement"), it is

clear that plaintiff's having a right to sue derivatively is not essential for the vindication of

his rights.

The NYLLCL has been in effect for more than ten years, and there is no

evidence in the record to support plaintiff's vision of LLCs run amuck.  Unless and until

the New York Legislature chooses to provide for the right to sue derivatively on behalf of

an LLC, we submit that the proper course of action is to respect the decisions of the New

York State courts and dismiss plaintiff's derivative claims.[1]

---

[1] Plaintiff himself has declared his intention to amend his complaint to assert an individual
claim if defendants' motion to dismiss is granted.  <u>See</u> Plaintiff's Memorandum of Law at
13-14, n. 4.  Defendants would not oppose such a motion to amend.

With respect to plaintiff's breach of contract claim -- the only claim that he does not assert derivatively -- plaintiff now argues that the alleged breach of § 6.8 of the Operating Agreement concerned <u>services</u> provided by defendant Provisions to FB LLC, despite the fact that the only transactions referenced in the Complaint are sales of <u>goods</u> to FB LLC. The gravamen of the Complaint is that the pricing in connection with such sales was unfair to FB LLC. Because § 6.8 limits its subject matter to agreements to provide loans or services to FB LLC, however, it is clear from the face of the Complaint that no valid claim for breach of the Operating Agreement has been alleged.

Finally, in addition to dismissing plaintiff's complaint, this Court should deny plaintiff's cross-motion to remand this case for lack of subject matter jurisdiction. All defendants except for the nominal defendant, FB LLC, are diverse from plaintiff, who is a New York citizen. And since the sole basis for joining FB LLC as a nominal defendant is that plaintiff has brought defective derivative claims that he has no right to bring on its behalf, citizenship of this "nominal defendant" must be disregarded. As a result, there is complete diversity of citizenship, and inasmuch as all of the other requisites for diversity jurisdiction are satisfied, plaintiff's cross-motion for remand is without merit.

**ARGUMENT**

**POINT I**

**MEMBERS OF A NEW YORK LLC
CANNOT BRING DERIVATIVE CLAIMS ON
THE LLC'S BEHALF, AS A MATTER OF LAW**

1.       **The Unanimous New York Case Law Precludes Plaintiff's Claims**

As instructed by the Second Circuit, and as noted in defendants' moving brief, this Court is normally required to defer to the rulings of the state courts on an issue of state law:

> Federal courts sitting in diversity cases will, of course, apply the substantive law of the forum state on outcome determinative issues.  In ascertaining the substantive law of the forum, federal courts will look to the decisional law of the forum state, as well as to the state's constitution and statutes.

Travelers Ins. Co. v. 633 Third Assocs., 14 F.3d 114, 119 (2d Cir. 1994) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L. Ed. 1188 (1938), 28 U.S.C. § 1652) (internal citations omitted).  Here, the forum state's statute and state court rulings are all in accord, and provide more than ample reason to dismiss plaintiff's derivative claims.

Plaintiff admits that all three New York state court cases that have recently addressed the precise issue before this Court concluded that a member of an LLC cannot bring a derivative action on its behalf.  See Plaintiff's Memorandum of Law at p. 9 (citing Hoffman v. Unterberg, 9 A.D.3d 386, 388-89, 780 N.Y.S.2d 617, 620 (2d Dep't 2004); Lio v. Zhong, No. 600455/05, 2006 WL 37044, 2006 N.Y. Slip Op. 50016(U), at *3 (Sup. Ct. N.Y. Co. Jan. 6, 2006); Schindler v. Niche Media Holdings, LLC, 1 Misc.3d 713, 716, 772 N.Y.S.2d 781, 785 (Sup. Ct. N.Y. Co. 2003)).  Not only is there no division of opinion among the New York state decisions, but indeed the appellate decision on point was unanimous.  This is hardly the circumstance for asserting the prerogative of a federal court sitting in diversity to proclaim superiority to the state courts in predicting that the New

York Court of Appeals will resolve the issue the opposite way. After all, each of theses judges is duty-bound to pronounce the law of the state as they themselves believe the Court of Appeals would pronounce it. To conclude that every one of these state court judges is wrong should require something on the order of overwhelmingly powerful convincing character. But nothing of the sort exists.

Plaintiff points only to <u>Weber v. King</u>, 110 F. Supp. 2d 124 (E.D.N.Y. 2000), and <u>Cabrini Dev. Council, CDC v. LCA-Vision, Inc.</u>, 197 F.R.D. 90 (S.D.N.Y. 2000), *vacated in part*, 292 F.3d 134 (2d Cir. 2002), two federal district court decisions that were both decided <u>before</u> there was any state court precedent on point. In <u>Weber</u>, in the absence of any case law guidance on point -- either state or federal -- Judge Mischler attempted to predict how the New York state courts would rule, turning to <u>Klebanow v. New York Production Exchange</u>, 344 F.2d 294, 297 (2d Cir. 1965). That case held -- <u>prior</u> to the enactment § 115-a of the New York Limited Partnership Law, in which the Legislature expressly provided for the right to sue derivatively on behalf of a limited partnership -- that a limited partner had the right to bring a derivative action on behalf of the limited partnership as a matter of common law.

Plaintiff correctly observes that defendants' moving brief at page 7 mistakenly stated that <u>Klebenow</u> was decided "prior to the enactment of New York's Limited Partnership Law," rather than, as it was, prior to the passage of Section 115-a of the New York Limited Partnership Law. While we regret this error, the distinction is nonetheless immaterial. The point is that, unlike in this case, it is indisputable that there was nothing before the court in <u>Klebenow</u> to suggest that the New York Legislature had expressly considered and rejected legislating a right to sue derivatively in the limited

partnership context at issue there. In that case, unlike this one, there truly was legislative

silence. In the LLC context at issue here, however, the Legislature expressly considered

derivative actions, and indeed one of the competing versions of the legislation creating

LLCs included detailed sections providing for derivative actions. But given the evident

lack of support for such provisions, they were deliberately excised so that the remainder of

the legislation could pass, thereby allowing New York to remain competitive with other

business center states.

When this Court decided <u>Cabrini</u>, it, like <u>Weber</u>, was similarly faced with a

complete lack of state court guidance and so, understandably, relied upon <u>Weber</u>. 97

F.R.D. at 94. But now that there is substantial and consistent state court guidance directly

on point, the situation is quite different, and the usual principle of deferring to state court

decisions on pure issues of state law should control. <u>See</u> <u>Travelers</u>, 14 F.3d at 119

("Where there is 'no decision by th[e state's highest] court then federal authorities must

apply what they find to be the state law after giving "proper regard" to relevant rulings of

other courts of the State.'").

2.     **The New York State Legislature Considered And Rejected
Statutory Provisions Permitting Members Of New York
LLCs To Bring Derivative Actions On Its Behalf**

Contrary to plaintiff's unsupported assertion (<u>see</u>, <u>e.g.</u>, Plaintiff's

Memorandum of Law at 6), the New York Legislature was <u>not</u> silent on whether members

of an LLC could bring a derivative action on its behalf. And this is what convinced the

New York state judges who have been presented with the question to rule as they have.

The legislative history of NYLLCL, as well as the statute itself, graphically shows that the

Legislature considered including a proposed Article IX in the NYLLCL that would have

expressly provided such a right, but later deliberately omitted that article in order to obtain

passage of the bill. This was neither by oversight nor happenstance. Indeed, the NYLLCL

was "one of the most complete, well-thought out drafts in the country." <u>See</u> Memorandum

of James N. Baldwin, Deputy Secretary of State, dated July 13, 1994 (a copy of which is

attached as Exhibit A to the Affirmation of Mitchell D. Haddad, Esq., dated February 28,

2006).

   As the transcript of the public hearing held by two members of the New

York State Assembly (attached as Exhibit B to the Affirmation of Michael E. Swartz, Esq.,

dated February 13, 2006) reflects, at the time of the hearing, there were two pending

versions of the new LLC law:  one passed by the New York State Senate which contained

no provision for derivative actions, and one by the New York State Assembly which

expressly included detailed sections providing such a right. <u>See</u> <u>Pub. Hearing on Ltd.</u>

<u>Liab. Co. Legis. Before the Assemb. Standing Comms. on Judiciary and Corps., Auths. &</u>

<u>Comm'ns</u>, at 62 (statement of Aileen Leventon, Co-Chair of the Joint Drafting Committee

and member of the New York State Bar Association Committee on Corporations). In the

end, following substantial debate over whether to include such provisions, the final

legislation as enacted deleted the derivative action provisions of Article IX contained in the

Assembly version.

   That omission is obvious even now in the law as enacted. The NYLLCL

contains thirteen Articles, but they are <u>not</u> numbered consecutively. Rather, the NYLLCL

is numbered from Article I through Article VIII, and then jumps to Article X through

Article XIV. Conspicuous by its absence from the final NYLLCL is the proposed Article

IX -- the section entitled "Derivative Claims" -- which would have permitted member

derivative actions. <u>See</u> <u>Schindler</u>, *supra*, 1 Misc.3d at 716, 772 N.Y.S.2d at 785. Because

an Article providing the right to bring derivative actions was indisputably present in one of

the versions of the NYLLCL considered, but then deliberately removed by the New York

Legislature prior to passage, the Legislature has clearly spoken on this issue. <u>See</u> <u>Lio</u>,

*supra*, 2006 WL 37044 at *3. Plaintiff's assertion that "the court in <u>Lio</u> incorrectly states

that the New York Legislature made a conscious decision to '<u>eliminate</u> the right' of

individual LLC members to bring a derivative action" (Memorandum of Law at 12

(emphasis added by plaintiff)), is thus patently absurd.

　　While it might be fallacious to draw conclusions from true legislative

silence, it is well-settled that "[a] court may examine changes made in proposed legislation

to determine [legislative] intent." <u>Majewski v. Broadalbin-Perth Cent. Sch. Dist.</u>, 91

N.Y.2d 577, 587, 673 N.Y.S.2d 966 (1998) (citing <u>United States v. St. Paul, Minneapolis</u>

<u>& Manitoba Ry. Co.</u>, 247 U.S. 310, 318; 38 S.Ct. 525, 528, 62 L. Ed. 1130 (1918);

<u>Woollcott v. Shubert</u>, 217 N.Y. 212, 221 (1916); <u>People v. Korkala</u>, 99 A.D.2d 161, 166,

472 N.Y.S.2d 310 (1st Dep't 1984) ("rejection of a specific statutory provision is a

significant consideration when divining legislative intent"). That is precisely what the

New York State courts have done in concluding that LLC members have no right to bring

derivative actions on their behalf.[2]

---

[2] Plaintiff's citation to <u>Robinson v. Smith</u>, 3 Paige Ch. 222 (N.Y. Ch. 1832), for the
proposition that common law derivative actions on behalf of corporations originated over
170 years ago (Plaintiff's Memorandum of Law at 8), despite the absence of express
statutory authorization, is inapposite. New York LLCs are not the same as any of the
various corporate forms that have existed in New York since before 1832. They are recent
creations that exist solely by reason of the carefully crafted and heavily debated legislation
passed by the New York Legislature in 1994. Plaintiff's assertion -- in his Memorandum
of Law at 13 n.3 -- that the common law has provided members of an LLC the right to

Plaintiff's reliance on the testimony of Howard Lefkowitz at the

Assembly's Public Hearing -- who urged adoption of the version of the bill containing

derivative action remedies -- as proof of what "the legislators ... clearly understood"

(Memorandum of Law at 13), is unavailing.  Mr. Lefkowitz's personal views -- which

were not even those of a legislator, much less the authoritatively expressed views of

legislators specifically responsible for passage, such as might be contained in a committee

report commenting on actually enacted provisions -- can in no way be viewed as indicative

of the intent of the New York Legislature.  In determining legislative intent, the courts

consider committee reports, sponsor statements, and rejected proposals to be the most

reliable sources.  See 2A Norman J. Singer, Statutes and Statutory Construction § 48A:11

at 676-78 (6th ed. 2000); see also Garcia v. U.S., 469 U.S. 70, 76, 105 S.Ct. 479, 483, 83

L. Ed. 2d 472 (1984) (the most "authoritative source for finding the Legislature's intent

lies in the Committee Reports on the bill"); Nachman Corp. v. Pension Ben. Guar. Corp.,

446 U.S. 359, 393, 100 S.Ct. 1723, 1742, 64 L. Ed. 254 (1980) ("Few principles of

statutory construction are more compelling than the proposition that Congress does not

intend sub silentio to enact statutory language that it has earlier discarded in favor of other

language.").  By contrast, statements made at public hearings by non-legislators are

entitled to little if any weight in interpreting legislative intent.  See Harry Fox Agency, Inc.

v. Mills Music, Inc., 543 F. Supp. 844, 868 (S.D.N.Y. 1982) ("the views expressed by

witnesses are not necessarily the same as those of the legislators ultimately voting on the

bill") (citing Ernst & Ernst v. Hochfelder, 425 U.S. 185, 204 n.24, 96 S.Ct. 1375, 1386

---

bring derivative actions for over 170 years is thus clearly wrong inasmuch as the LLC form
did not even exist in New York until 12 years ago.

n.24, 47 L. Ed. 2d 668 (1976), <u>McCaughn v. Hershey Chocolate Co.</u>, 283 U.S. 488, 493-

94, 51 S.Ct. 510, 512, 75 L. Ed. 1183 (1931), <u>March v. United States</u>, 506 F.2d 1306, 1314

n.30 (D.C.Cir. 1974)), *rev'd*, 720 F.2d 733 (2d Cir. 1983), *rev'd*, <u>Mills Music v. Snyder</u>,

469 U.S. 153, 105 S.Ct. 638, 83 L. Ed. 2d 556 (1985).

### 3.   **Plaintiff Has Ample Remedies Without Derivative Claims**

Plaintiff asserts that, absent a derivative claim on behalf of FB LLC, he is

left without a remedy to redress the alleged breach of fiduciary duties of which he

complains.  However, as plaintiff himself acknowledges in footnote 4 on pages 13-14 of

his Memorandum of Law, New York courts have recognized that a member of an LLC can

interpose individual claims against a managing member for breach of fiduciary duty.  <u>See</u>

<u>Lio</u>, 2006 WL 37044, at *3; <u>Nathanson v. Nathanson</u>, 20 A.D.3d 403, 404, 799 N.Y.S.2d

83, 84-85 (2d Dep't 2005) (holding plaintiff's allegations that manager-member of LLC

engaged in self dealing sufficient to state an individual cause of action for breach of

fiduciary duty).[3]  As noted by one New York court, such claims are a personal right that

belong to the minority member of an LLC.  <u>Lio</u>, 2006 WL 37044, at *3 (citing James R.

Burkhard, <u>LLC Member and Limited Partner Breach of Fiduciary Duty Claims: Direct or</u>

<u>Derivative Actions</u>, 7 J. Small and Emerging Bus. L. 19 (2003)).

Indeed, the NYLLCL itself clearly recognizes the existence of an LLC

member's ability to bring an individual damages claim for breach of a fiduciary duty

against an LLC manager.  NYLLCL § 417(a)(i) provides that an LLC operating agreement

may limit "the personal liability of managers to the limited liability company <u>or its</u>

---

[3] Significantly, the plaintiff in <u>Nathanson</u> did not assert any derivative claims, but rather, in
accordance with the statutory framework, brought an action as an individual member of the
LLC against the managing member.

members for damages for any breach of duty in such capacity, provided that no such provision shall eliminate or limit" liability for bad faith, intentional conduct, etc. <u>See</u> McKinney's New York Limited Liability Company Law § 417 (emphasis added). Obviously, there would be no need to include a provision that specifically limits what restrictions an LLC operating agreement may place on individual breach of duty damage actions an LLC member may bring against an LLC manager unless the LLC member has the right to bring such an individual breach of duty action in the first place.

Thus, plaintiff clearly does have an adequate individual damage remedy, and it is ludicrous to suggest that in the absence of an ability to bring derivative claims, various provisions of the NYLLCL -- such as § 409 (imposing fiduciary duties on managing members) and § 411 (prohibiting certain related-party transactions not approved by disinterested managers or members) -- would be "completely unenforceable." <u>See</u> Plaintiff's Memorandum of Law at 15. The difference is that in an individual action, a plaintiff LLC member may recover only to the extent of his own injury. If other members are aggrieved, they are free to seek appropriate judicial relief on their own.

In short, plaintiff's argument that "in the absence of a common law right to bring a derivative action on behalf of a New York LLC . . . managing LLC members [] would be free to breach their fiduciary obligations and otherwise loot it with complete impunity" (<u>see</u> Plaintiff's Memorandum of Law at 14), is a complete red herring. He simply has no right to bring derivative claims, and the First, Second, Fourth, Fifth, Sixth and Seventh Claims for Relief must accordingly be dismissed.

## POINT II

## PLAINTIFF'S BREACH OF CONTRACT CLAIM
## IS FATALLY DEFECTIVE ON ITS FACE

Plaintiff alleges that FB LLC's managers breached § 6.8 of the Operating

Agreement by causing FB LLC to purchase <u>goods</u> (<u>i.e.</u>, meat products) manufactured by its

affiliate, Provisions, "on terms and conditions that were less favorable" to FB LLC than it

would have obtained in arms-length transactions with non-affiliates. <u>See</u> Complaint ¶¶ 1,

29-31, 43-44, 46-48, 61, 67, 73, 79, 84. However, as discussed in defendants' moving

brief, § 6.8 of the Operating Agreement, by its terms, applies only to loans or agreements

"to provide <u>services</u>" to FB LLC. Neither § 6.8 nor any other provision of the Operating

Agreement purports to govern or impose any restrictions on FB LLC's purchases of <u>goods</u>

from affiliates. Because the Complaint's allegations concern only Provisions' sales of

goods to FB LLC, plaintiff fails to state a claim for breach of the Operating Agreement.

In response to defendants' motion to dismiss, plaintiff ignores his own

Complaint's allegations, and instead attempts to argue that the sales of Provisions-

manufactured meat products to FB LLC concerned what they now label as "product supply

services." <u>See</u> Plaintiff's Memorandum of Law at 6. Plaintiff's quixotic attempt to re-

characterize the sale of goods into the providing of "product supply services" so as to fit

within § 6.8 of the Operating Agreement must be rejected as Orwellian doublespeak.

Words really do have meaning. Merely because plaintiff chooses to call a ham a "service,"

it is still just a ham.

The usual rule is that contract interpretation is a matter of law for the court,

and is therefore "suitable for disposition on a motion to dismiss." <u>Citadel Equity Fund Ltd.</u>

<u>v. Aquila, Inc.</u>, 371 F. Supp. 2d 510, 516 (S.D.N.Y. 2005) (citing <u>Thayer v. Dial Indus.</u>

Sales, Inc., 85 F. Supp. 2d 263, 269 (S.D.N.Y. 2000); see also VKK Corp. v. Nat'l

Football League, 244 F.3d 114, 129 (2d Cir. 2001) ("Under New York law, the initial

interpretation of a contract is a matter of law for the court to decide."). Plaintiff's cites

Teig v. Suffolk Oral Surgery Assocs., 2 A.D.3d 836, 837, 769 N.Y.S.2d 599, 600 (2d

Dep't 2003), for the proposition that where a contract's language "'seems clear on its face'

but is ambiguous as to its applicability to a particular circumstance, resolution of that issue

is a question of fact that cannot be determined on a motion to dismiss." See Plaintiff's

Memorandum of Law at 17. But that is not what Teig held at all. In Teig, both the court

and the appellate court interpreted the contract provision as a matter of law. The appellate

court ordered that there be a hearing on remand simply to determine whether there was an

economic shortfall requiring compensation in light of its contract interpretation (see Teig,

2 A.D.3d at 838, 769 N.Y.S.2d at 601), not to take evidence relating to how the contact

should be construed.

        All of the cases plaintiff cites in which the courts classified particular

transactions as contracts for the provision of services genuinely involved the provision of

services either to transform or enhance goods. See, e.g., N. Am. Leisure Corp. v. A & B

Duplicators LTD., 468 F.2d 695, 696 (2d Cir. 1972) (concerning contract where plaintiff

shipped its master tapes to defendant and defendant converted tapes into 8-track cartridges,

and then packaged 8-tracks into boxes, wrapped boxes in cellophane wrappers,

warehoused product, and shipped upon instructions from plaintiff).[4] Likewise, the cases

---

[4] See also Manes Org., Inc. v. Standard Dyeing and Finishing Co., 472 F. Supp. 687, 688, 690 (S.D.N.Y. 1979) (contract where plaintiff shipped textiles to defendant, defendant performed dyeing, finishing and processing according to instructions from plaintiff, and defendant shipped finished product directly to plaintiff's customers); For Children, Inc. v. Graphics Int'l Inc., 352 F. Supp. 1280, 1283 (S.D.N.Y. 1972) (contract where children's book publisher contracted with graphic design company to create a pop-up book); Curtis

cited by plaintiff in which the courts held that the goods/services distinction required

additional factual development concerned genuinely hybrid transactions.  See, e.g., Back

O'Beyond, Inc. v. Tel. Enters., Inc., 76 A.D.2d 897, 898, 429 N.Y.S.2d 250, 251 (2d Dep't

1980) (Weinstein, J., dissenting) (contract for the sale and installation of a security fire

alarm system).[5]  None of the cited cases included the simple sale of goods from one

company to another as alleged in the Complaint.

       Clearly aware that his breach of contract claim is defective, plaintiff takes

refuge in his newly-minted claim that the Complaint's allegations state a claim for "breach

of the covenant of good faith and fair dealing implicit in the Operating Agreement."

Plaintiff's Memorandum of Law at 22.  First, "[n]ew claims not specifically asserted in the

complaint may not be considered by courts when deciding a motion to dismiss."  Lerner v.

Forster,  240 F. Supp. 2d 233, 241 (E.D.N.Y. 2003) (citing In re Colonial Ltd. P'ship

Litig., 854 F. Supp. 64, 79 (D.Conn. 1994) ("Allegations made outside of the complaint are

---

Publ'g Co. v. Sheridan, Jr., 53 F.R.D. 642, 643-45 (S.D.N.Y. 1971) (contract where book
publisher contracted with printer company to print book); WM. H. Wise & Co. v. Rand
McNally & Co., 195 F. Supp. 621, 626-27 (S.D.N.Y. 1961) (contract where book publisher
contracted with printer company to print and bind book); see also Esquire Radio & Elecs.,
Inc. v. Montgomery Ward & Co., Inc., 804 F.2d 787, 790-91, 795 (2d Cir. 1986)
(involving "[a] tripartite product buy-back arrangement," where plaintiff acted as "middle-
man vendor" and imported and stored finished consumer electronic products and spare
parts from foreign manufacturers for defendant's ultimate repurchase); Coca-Cola Bottling
Co. of Elizabethtown, Inc. v. Coca-Cola Co., 696 F. Supp. 57, 84 (D.Del. 1988) (finding
contract was not merely for sale of syrup to bottlers but also included "covenants making
obligatory on the part of purchaser to establish bottling plants having a capacity sufficient
to supply the greater part of the nation and restricting the resale of the syrup, 'except after
it is carbonated and bottled' . . . and grant[ing] the sole and exclusive right to use the trade-
mark of the vendor, not upon the syrup, but upon the product of those bottling plants").

[5] See also Alesayi Beverage Corp. v. Canada Dry Corp., 947 F. Supp. 658, 667 (S.D.N.Y.
1996) (contract for the sale of extracts and "for services that were not incidental to the sale
of goods"); Farm Automation Corp. v. Senter, 84 A.D.2d 757, 758, 443 N.Y.S.2d 765 (2d
Dep't 1981) (contract to render services and supply materials necessary for the installation
of a silo system on defendant's farm).

        14

not properly before the court on a motion to dismiss.")); see also Dugar v. Coughlin, 613 F. Supp. 849, 854 n.3 (S.D.N.Y. 1985) (holding claims that did not appear in plaintiff's complaint, are not properly before the Court on defendants' 12(b)(6) motion).

But more fundamentally, the covenant of good faith does not override express contractual provisions and limitations (see, e.g., Murphy v. Am. Home Prods. Corp., 58 N.Y.2d 293, 304, 461 N.Y.S.2d 232 (1983)), and thus cannot be used to ignore the express subject matter of § 6.8 of the Operating Agreement so as to extend it to cover sales of goods to FB LLC.  See Fesseha v. TD Waterhouse Investor Servs., Inc., 305 A.D.2d 268, 268, 761 N.Y.S.2d 22 (1st Dep't 2003) ("While the covenant of good faith and fair dealing is implicit in every contract, it cannot be construed so broadly as to . . . create independent contractual rights."); Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Xerox Corp., 807 N.Y.S.2d 344, 2006 N.Y. Slip Op. 00004, at *2 (1st Dep't 2006) (affirming dismissal of plaintiff's claim for breach of defendants' duty of good faith and fair dealing because it was merely a substitute for plaintiff's non-viable contract claims); PT Kaltim Prima Coal v. AES Barbers Point, Inc., 180 F. Supp. 2d 475, 483 (S.D.N.Y. 2001) ("the duty cannot be used to create independent obligations beyond those agreed upon and stated in the express language of the contract; it cannot add to, detract from, or alter the terms of the contract itself") (quotation marks omitted).

That plaintiff has not stated a viable claim for breach of the Operating Agreement does not leave him without a remedy.  To the extent that plaintiff alleges the defendant-managers engaged in abusive self-dealing, plaintiff is clearly free to assert an individual damages claim for breach of fiduciary duty.  But his claim for breach of the

Operating Agreement is plainly meritless on its face and his Third Claim for Relief should be dismissed.

**POINT III**

**PLAINTIFF'S CROSS-MOTION SHOULD BE DENIED**

All defendants except for FB LLC are diverse from plaintiff, who is a New York citizen. Provisions is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Florida, and Frank Brunckhorst III, Robert S. Martin, and Barbara Brunckhorst, are all individuals domiciled in Florida. And while FB LLC is not diverse from plaintiff, since certain of its members are New York citizens, FB LLC -- named only as a "nominal defendant" -- must be disregarded for this purpose.

Generally, the citizenship of nominal defendants cannot prevent removal and their existence is disregarded for purposes of determining diversity. See 16 Moore's Federal Practice § 107.14[2][c][iv][A] (3d ed. 2002). "'[C]itizens' upon whose diversity a plaintiff grounds jurisdiction must be real and substantial parties to the controversy." Navarro Savings Assn. v. Lee, 446 U.S. 458, 460, 100 S.Ct. 1779, 64 L. Ed. 2d 425 (1980). A nominal defendant is one against whom "there is no possibility, based on the pleadings, that the plaintiff can state a cause of action . . . in state court." Pampillonia v. RJR Nabisco, Inc., 138 F.3d 459, 461 (2d Cir. 1998). Thus, federal courts must disregard nominal parties and "rest jurisdiction only upon the citizenship of real parties to the controversy." Navarro, 446 U.S. at 461.

The sole basis for naming FB LLC as a defendant is that plaintiff has styled six of his seven claims as non-existent derivative actions on behalf of nominal defendant

FB LLC.[6]  In a proper derivative action, the corporation on whose behalf the action is brought, though only a nominal defendant, is, nevertheless, treated as a true defendant for purposes of diversity jurisdiction.  Haymes v. Columbia Pictures Corp., 16 F.R.D. 118, 120 (S.D.N.Y. 1954) (citing Lavin v. Lavin, 182 F.2d 870 (2d Cir. 1950)).  But no such proper derivative action has been brought here, since a member of a New York limited liability company lacks standing to and cannot bring a derivative action on its behalf.  See pp. 4-11, *supra*.

Thus, plaintiff's inclusion of FB Co. as a "nominal defendant" is barred by the doctrine of fraudulent joinder.  See Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc., 373 F.3d 296, 302 (2d Cir. 2004) (doctrine of fraudulent joinder prevents plaintiffs from abusing 28 U.S.C. § 1332(a) who join non-diverse parties solely in an effort to defeat federal jurisdiction), *cert. denied,* 125 S.Ct. 1704, 161 L. Ed. 2d 525 (2005); see also Hill v. Delta Int'l Mach. Corp., 286 F. Supp. 2d 427, 431 (S.D.N.Y. 2005) (holding removal proper under doctrine of fraudulent joinder).  Since there is complete diversity among the parties that may properly be considered, and because the amount in controversy exceeds $75,000.00, exclusive of interest and costs, this Court has subject matter jurisdiction under 28 U.S.C. § 1332 and removal was thus proper.

Plaintiff's motion to remand is therefore meritless and should be denied.

---

[6] The remaining claim for relief for breach of contract is asserted by plaintiff only against defendants other than FB LLC.

## CONCLUSION

For the reasons set forth above, and those set forth in defendants' opening

memorandum, defendants' motion to dismiss the Complaint should be granted in its

entirety and plaintiff's cross-motion to remand should be denied.

Dated:      New York, New York
            February 28, 2006

                        Respectfully submitted,

                        _____
                        WEIL GOTSHAL & MANGES LLP
                        Peter D. Isakoff (PI-1614)
                        Mitchell D. Haddad (MH-7782)
                        Jared R. Friedmann (JF-2004)
                        767 Fifth Avenue
                        New York, New York  10153
                        Telephone:    212-310-8000
                        Facsimile:    212-310-8007

                                -and-

                        GOLENBOCK EISEMAN ASSOR
                        BELL & PESKOE LLP
                        Martin S. Hyman (MH-4131)
                        437 Madison Avenue
                        New York, New York  10022
                        Telephone:    212-907-7360
                        Facsimile:    212-754-0777

                        Attorneys for Defendants
                        and Nominal Defendant