UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -x

ERIC BISCHOFF, individually and as :
a member of Frank Brunckhorst Co.,
L.L.C., and in the right of and on :
behalf of Frank Brunckhorst Co.,
L.L.C.,                            :

            Plaintiff,      :          **OPINION**

        - against -         :          06 Civ. 106 (DC)

BOAR'S HEAD PROVISIONS CO., INC.,  :
FRANK BRUNCKHORST III and ROBERT
S. MARTIN, individually and as     :
managers and members of Frank
Brunckhorst Co., L.L.C., and as    :
directors and officers of Boar's
Head Provisions Co., Inc., and     :
BARBARA BRUNCKHORST, individually
and as a member of Frank           :
Brunckhorst Co., L.L.C., and as a
director of Boar's Head Provisions :
Co., Inc.,                         :

            Defendants,     :

        - and -             :

FRANK BRUNCKHORST CO., L.L.C.,     :

        Nominal Defendant.         :
- - - - - - - - - - - - - - - - - -x


**APPEARANCES:**    (See last page)

**CHIN, D.J.**

        In this diversity case, plaintiff Eric Bischoff sues

the controlling members and managers of Frank Brunckhorst Co.,

LLC ("FB Co."), the nationwide distributor of the well-known

Boar's Head delicatessen products, for purportedly diverting

millions in profits from FB Co. to Boar's Head Provisions Co.,

Inc. ("Provisions"), one of FB Co.'s suppliers.  Although

Bischoff and defendants have ownership interests in both companies, he claims that defendants have a greater stake in Provisions and have abused their positions of control to structure transactions between the two companies in Provisions's favor.

Defendants move to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6).  Plaintiff cross-moves to remand the case to state court for lack of subject matter jurisdiction pursuant to 28 U.S.C. § 1447(c).  For the reasons set forth below, the motion to dismiss is denied and the cross-motion for remand is granted.

## STATEMENT OF THE CASE

### A.   The Facts

For purposes of this motion, the facts in the complaint are assumed to be true and are construed in the light most favorable to Bischoff, the non-moving party.

In the early 1900s, Frank Brunckhorst ("Brunckhorst") first began peddling deli meats on the streets of Brooklyn, New York, from the back of a horse-drawn wagon bearing the distinctive "Boar's Head" logo.  (Compl. ¶¶ 2, 17).  Prior to 1918, Brunckhorst purchased the Boar's Head brand and logo, which now belong exclusively to FB Co.  (Id. ¶¶ 2-3, 18, 33).  The Boar's Head brand has become well-known nationwide, in part due to the millions of advertising dollars FB Co. spends each year promoting the Boar's Head name.  (Id. ¶¶ 3, 33).

Over the past century, FB Co. has expanded from a local business serving "mom and pop" establishments in Brooklyn to a distributor of products to supermarkets and delicatessens in more than thirty states. (Id. ¶¶ 17, 30). In 1933, Brunckhorst's son and other relatives formed Provisions to manufacture processed meats for exclusive distribution by FB Co. under the Boar's Head name. (Id. ¶¶ 2, 20, 29). This relationship remains in place today, with FB Co. distributing 100% of Provisions's products. FB Co. also distributes additional meat and complementary products, such as mustard and sauerkraut, from other manufacturers. (Id. ¶¶ 29, 31).

Both companies have become hugely successful and are valued collectively at over $1 billion. (Id. ¶¶ 21-22, 29). The vast majority of these profits are attributable to the Boar's Head brand, and until the 1990s, FB Co. earned much higher profits than Provisions, even though most of its revenues came from Provisions-manufactured goods. (Id. ¶¶ 5, 40). Since then, a considerable reversal in the revenue-sharing of the two companies has taken place, as Provisions's profits now more than triple the amount of FB Co.'s profits. (Id. ¶¶ 40-41).

Plaintiff contends that this disparity in earnings is attributable to defendants' deliberate campaign to siphon hundreds of millions of dollars in profits from FB Co. to Provisions. (Id. ¶¶ 5-6, 41). While defendants possess ownership interests in both companies, they have a greater stake in Provisions because they each earn a greater percentage of

Provisions's profits than FB Co.'s profits.  (Id. ¶¶ 6, 11-13, 26).  Thus, plaintiff alleges, defendants have an incentive to divert revenue from FB Co. to Provisions, and the means to do so as controlling members of both companies.

**B.    The Parties**

FB Co. is a New York limited liability company ("LLC"), and Provisions is a Delaware corporation, with its principal place of business in Florida.  (Compl. ¶¶ 9-10; Notice of Removal ¶ 3).  Although their shareholders and management are not identical, both are primarily held by Brunckhorst's direct descendants and there is significant overlap between the two companies.  (Compl. ¶¶ 1, 4).

Bischoff, a New York resident and Brunckhorst's great-grandson, is a member and 20.37% owner of FB Co.  (Id. ¶¶ 8, 17). He is also a shareholder and employee of Provisions, with an 8.333% ownership interest in that company.  (Id. ¶ 8).

The individual defendants, all residents of Florida, also have ownership interests in both companies.  (Id. ¶¶ 6, 11-13).  All three are directors and controlling shareholders of Provisions.  (Id. ¶¶ 11-14).  Barbara Brunckhorst, Brunckhorst's granddaughter, is a member of FB Co.  (Id. ¶¶ 13, 17).  Frank Brunckhorst III and Robert S. Martin, also great-grandsons of Brunckhorst, are managing and controlling members of FB Co.  (Id. ¶¶ 11-12, 14, 17).

## C.  **Procedural History**

Plaintiff filed his complaint in New York State Supreme Court, New York County, on December 5, 2000, asserting seven causes of action, including breach of fiduciary duty, breach of the operating agreement, waste, unjust enrichment, and money had and received.  All but the breach of operating agreement claim are asserted derivatively on behalf of FB Co.

Defendants removed the case to this Court on January 6, 2006, on the basis that all defendants except FB Co. are diverse from plaintiff.  (Notice of Removal ¶ 8).  While FB Co. has New York citizen members, defendants contend that it is merely a "nominal defendant" that must be disregarded for purposes of determining diversity.  (Id.).  Defendants then filed the instant motion to dismiss on January 20, 2006.  On February 13, 2006, plaintiff filed his opposition and cross-motion to remand the case to state court for lack of subject matter jurisdiction.  The motion was argued on March 30, 2006, and the Court reserved decision.

## DISCUSSION

The principal issue before the Court is whether a member of a New York LLC may bring a derivative action on behalf of the LLC.  Defendants contend that plaintiff's complaint must be dismissed because an LLC member may not sue derivatively under New York law.  Plaintiff contends that derivative suits are permissible as a matter of common law.  Consequently, plaintiff contends, defendants' motion should be denied and the case should

be remanded to the state court because FB Co. is a non-diverse defendant.  I discuss each motion in turn.

## A.  **Defendants' Motion to Dismiss**

Federal courts sitting in diversity are bound by the substantive law of the forum state.  See Travelers Ins. Co. v. 633 Third Assocs., 14 F.3d 114, 119 (2d Cir. 1994) (citations omitted).  Where state law is ambiguous, the federal court must predict how the highest state court would decide the issue.  See id.  Whether a member of an LLC may bring a derivative action under New York law is not clear, for the New York State Court of Appeals has not addressed the issue.  Accordingly, this Court must predict how the Court of Appeals would rule.  In so doing, the Court must "carefully review available resources," including, inter alia, the language of relevant statutes, the legislative history, federal decisions construing state law, and lower state court rulings.  Id. (citations and quotation marks omitted); see also Phansalkar v. Andersen Weinroth & Co., 344 F.3d 184, 199 (2d Cir. 2003).

First, I review the various available resources bearing on the issue of whether a member of an LLC can bring a derivative suit: the common law, the text and history of the New York LLC statute, the similarities between LLCs and other corporate forms, federal cases construing state law, and state court decisions. Second, I weigh the various considerations to decide the question.

1.  **The Available Resources**

    a.  **Common Law**

Derivative actions on behalf of corporate entities have long existed at common law.  See Robinson v. Smith, 3 Paige Ch. 222 (N.Y. Ch. 1832) (stating principle that suit to hold corporate officers accountable for wasted corporate funds must be brought in corporation's name).  Such equitable suits have been recognized without statutory authorization since the 1800s.  See id.; see also Brinckerhoff v. Bostwick, 88 N.Y. 52, 53 (1882) (relying on Robinson to find that stockholders had standing to sue corporation in their own names); Carter G. Bishop & Daniel S. Kleinberger, Limited Liability Companies: Tax and Business Law ¶ 10.07[2] (2006) (citing Hichens v. Congreve, 38 Eng. Rep. 917 (Ch. 1828)).  This common law right to sue derivatively is rooted in the law of trusts, pursuant to which a beneficiary (also called a cestui que trust) has the equitable right, independent of statute, to bring a cause of action that belongs to the trust but upon which the trust refuses to act.  See Klebanow v. N.Y. Prod. Exch., 344 F.2d 294, 297 (2d Cir. 1965) (noting the right of the cestui que trust to bring derivative suit before finding that limited partners also have such a right); Riviera Cong. Assocs. v. Yassky, 18 N.Y.2d 540, 547 (1966) ("The derivative suit is, in effect, 'a combination of two causes of action' -- one against the trustees for wrongfully refusing to sue and the other against the party who is liable to the trust.") (citations omitted).

### b. **The NYLLCL Text and History**

The New York Limited Liability Company Law ("NYLLCL"), providing for the formation of LLCs, does not expressly permit or prohibit derivative actions by an LLC member. See NYLLCL § 101 et seq. The NYLLCL was enacted in 1994, two years after it was first introduced in the state legislature. 1 Karon S. Walker, N.Y. Practice Series, N.Y. Limited Liability Companies & Partnerships § 1:2 (2006) ("N.Y. Practice"). While earlier versions of the NYLLCL contained a proposed Article IX, authorizing derivative actions, this article was omitted by the legislature in the final law, purportedly to ease passage of the balance of the statute.[1] See Bruce A. Rich, Practice Commentaries to NYLLCL § (1)(G) (McKinney 2005) ("Practice Commentaries").

There is no clear indication as to why Article IX was left out of the final statute. The Practice Commentaries to the NYLLCL provide the following explanation: "Because some legislators had raised questions about the derivative rights provisions, to avoid jeopardizing passage of the balance of the law, Article IX was dropped." Id. But the commentaries also recognize that "courts have looked to common law in permitting derivative actions on behalf of LLCs." Id. (citing Weber v.

---

[1]    Proposed Article IX was entitled "Derivative Actions" and outlined the requirements for an LLC member to bring a derivative suit. See A.B. 7127, 215th Gen. Assem., Reg. Sess. (N.Y. 1993).

<u>King</u>, 110 F. Supp. 2d 124 (E.D.N.Y. 2000), and <u>Cabrini Dev.</u>
<u>Council v. LCA-Vision, Inc.</u>, 197 F.R.D. 90 (S.D.N.Y. 2000)).

    **c.**   **Similarities to Limited Partnerships**
           **and Corporations**

      The LLC was designed as a hybrid of the corporate and
limited partnership forms, offering the tax benefits and
operating flexibility of a limited partnership with the limited
liability protection of a corporation.  <u>See</u> <u>Weber v. King</u>, 110 F.
Supp. 2d 124, 131 (E.D.N.Y. 2000); <u>see also</u> N.Y. Practice § 1:2
(explaining that the NYLLCL drew upon the N.Y. Revised Limited
Partnership Act and N.Y. Business Corporation Law).  Corporate
shareholders and limited partners are entitled to bring
derivative suits on behalf of the corporation or partnership.
<u>See</u> <u>Weber</u>, 110 F. Supp. 2d at 131; N.Y. Bus. Corp. Law § 626;
N.Y. Partnership Law § 115-a(2), (3).  Before such actions were
codified in statute, the courts recognized them at common law.
<u>See, e.g.</u>, <u>Riviera</u>, 18 N.Y.2d at 547 (recognizing limited
partners may sue derivatively on behalf of the partnership);
<u>Brinckerhoff</u>, 88 N.Y. at 53 (finding that stockholders had
standing to sue corporation in their own names).

      For example, in the limited partnership context, the
Second Circuit found that limited partners had the right to sue
derivatively on behalf of the partnership, even absent statutory
authority.  <u>Klebanow v. N.Y. Prod. Exch.</u>, 344 F.2d 294 (2d Cir.
1965).  Like the NYLLCL, the limited partnership statute was
enacted without a provision for derivative actions.  A provision

of the state partnership law did address "parties to actions," stating that "[a] contributor, unless he is a general partner, is not a proper party to proceedings by or against a partnership, except where the object is to enforce a limited partner's right against or liability to the partnership." N.Y. Partnership Law § 115. The court recognized that a reading of § 115 that prohibited a limited partner from suing on the partnership's behalf was possible but did not see "sufficient reason" to interpret the provision in a way that prohibited derivative suits, especially when such suits were permitted in analogous situations for trust beneficiaries and preferred stockholders. Klebanow, 344 F.2d at 298.

Rather than viewing statutory silence as a prohibition on derivative suits, the Second Circuit found that because limited partners share important characteristics with corporate shareholders (e.g., expectation of profit-sharing, immunity from personal liability, and no ownership of partnership property), they too, like shareholders, could maintain a derivative action as a matter of common law. Id. at 297-98. Thus, when general partners refused to act, limited partners could sue derivatively on behalf of the partnership. Id. at 298. It was not until three years later that an explicit authorization of derivative actions was added to the law. See NY Partnership Law § 115-a (enacted 1968).

### d.  **Federal Decisions**

This Court and the Eastern District of New York have permitted derivative suits on behalf of New York LLCs under common law, despite the absence of explicit statutory authority. See Cabrini Dev. Council v. LCA-Vision, Inc., 197 F.R.D. 90 (S.D.N.Y. 2000), vacated in part on other grounds sub nom. Excimer Assocs. v. LCA Vision, Inc., 292 F.3d 134, 139-40 (2d Cir. 2002); Weber v. King, 110 F. Supp. 2d 124 (E.D.N.Y. 2000). In Weber, Judge Mishler described the legislature's decision not to expressly provide for derivative actions as "peculiar" considering that LLCs are hybrids of partnerships and corporations, both of which allow such actions. 110 F. Supp. 2d at 131. The court ultimately found that the exclusion of a derivative suit provision did not "prevent[ the court] from recognizing such a right at common law." Id. Because LLC members share the same stockholder traits as limited partners, Judge Mishler found the Second Circuit's reasoning in Klebanow applied with equal force to permit derivative actions in the LLC context. Weber, 110 F. Supp. 2d at 131-32; see also Solutia Inc. v. FMC Corp., 385 F. Supp. 2d 324, 331 n.1 (S.D.N.Y. 2005) (noting that "New York corporate law applies in full force to [LLCs]").

Similarly, I concluded in Cabrini that the plaintiffs, as LLC members, had a reasonable basis under New York state law to sue derivatively on behalf of the LLC. 197 F.R.D. at 94-95. Thus, I remanded the case to state court because the LLC, as a

proper defendant, destroyed diversity.  Id. at 98.  In reaching

this conclusion, I noted the absence of relevant state court

decisions at the time and relied on Weber, the only decision on

the issue.  Id. at 94-95.

####     e.   State Decisions

Four New York state courts (three trial and one

appellate) have concluded that derivative actions are prohibited

under state law.  See Hoffman v. Unterberg, 780 N.Y.S.2d 617 (2d

Dep't 2004); Tzolis v. Wolff, No. 108353/05, 2006 WL 1310621

(N.Y. Sup. Ct. Mar. 20, 2006); Lio v. Zhong, No. 600455/05, 2006

WL 37044 (N.Y. Sup. Ct. Jan. 6, 2006); Schindler v. Niche Media

Holdings, LLC, 772 N.Y.S.2d 781 (N.Y. Sup. Ct. 2003).  Both the

Second Department in Hoffman and the trial court in Schindler

relied solely on the legislature's decision to omit the

derivative provision from the NYLLCL, as described in the

Practice Commentaries, to hold that New York LLC members may not

sue derivatively.  See Hoffman, 780 N.Y.S.2d at 620; Schindler,

772 N.Y.S.2d at 785.  The trial court in Tzolis held the same,

noting it was bound by the appellate court's decision in Hoffman.

See Tzolis, 2006 WL 1310621, at *4.

Only one state court has considered the availability of

derivative suits under the common law.  See Lio, 2006 WL 37044,

at *3.  The Lio court, however, determined that derivative

actions did not remain for LLC members because "most courts have

held that the deliberate omission of such a remedy in the statute

means that there is no such right at all."  Id. (citing the two

prior state court decisions at the time, <u>Hoffman</u> and <u>Schindler</u>). But this portion of the decision was merely dicta because the plaintiff had actually withdrawn his derivative claim.  <u>Id.</u>

    **2.**  **Analysis**

        Taking into account the considerations set forth above, I conclude that New York LLC members may bring derivative actions under New York law for the following reasons.  First, because an LLC is a hybrid of the corporate and limited partnership forms, its members should have the same rights as corporate shareholders and limited partners, including the right, under common law, to bring derivative claims.  Second, the common law may only be overridden by a clear statement of legislative intent, and the legislature's omission of explicit authorization for derivative actions does not constitute such intent.  Third, the lower state court decisions that rely on the legislature's omission of the proposed derivative provision are not persuasive.  Fourth, plaintiff's claims are properly characterized as derivative in nature.  I discuss each of these concepts in more detail.

        First, as a hybrid of the corporation and limited partnership, the LLC shares many characteristics with these similar corporate forms.  As a result, LLC members should have comparable rights with corporate shareholders and limited partners.  <u>See</u> <u>Weber v. King</u>, 110 F. Supp. 2d 124, 131 (E.D.N.Y. 2000).  In particular, corporate shareholders and limited partners have long held the right at common law to file derivative actions.  <u>See, e.g.</u>, <u>Riviera Cong. Assocs. v. Yassky</u>,

18 N.Y.2d 540, 547 (1966); Brinckerhoff v. Bostwick, 88 N.Y. 52, 53 (1882).  Hence, under the common law, LLC members undoubtedly would also have the right to bring derivative claims.  See Weber, 110 F. Supp. 2d at 131-32 (summarizing and relying on Klebanow v. N.Y. Prod. Exch., 344 F.2d 294 (2d Cir. 1965), to find a derivative right for LLC members); see also Klebanow, 344 F.2d 294 (finding that because of similarities between limited partners and corporate shareholders, limited partners could sue derivatively despite absence of statutory authority).

Second, the common law can only be displaced by a statement of "clear and specific legislative intent."  Hechter v. N.Y. Life Ins. Co., 46 N.Y.2d 34, 39 (1978).  Hence, the legislature's failure to expressly provide for derivative suits in the NYLLCL does not necessarily signify an intent to eliminate derivative rights that undoubtedly existed under the common law.  See Weber, 110 F. Supp. 2d at 131.  While change to proposed legislation is one factor in discerning legislative intent, see Majewski v. Broadalbin-Perth Cent. Sch. Dist., 1 N.Y.2d 577, 587 (1998); see also People v. Korkala, 472 N.Y.S.2d 310, 313 (1st Dep't 1984) ("[R]ejection of a specific statutory provision is a significant consideration when divining legislative intent . . . ."), the Court hesitates to read into this act of omission the intent to abrogate derivative rights altogether.  See N.Y. Statutes § 301(a) ("Generally, statutes in derogation of the common law receive a strict construction."); id. § 301(b) ("The common law is never abrogated by implication . . . .").

Moreover, it is to be presumed that legislation takes place "against a background of common-law adjudicatory principles." Katt v. City of N.Y., 151 F. Supp. 2d 313, 336 (S.D.N.Y. 2001). Thus, legislators were aware that the right to bring derivative suits on behalf of similar entities existed at common law. Indeed, the assembly solicited testimony on the matter at a public hearing on the proposed NYLLCL and was told that an LLC member would have the common law right to bring a derivative suit on behalf of the LLC "whether or not the statute contains such an express right." Public Hearing on Limited Liability Company Legislation, N.Y. Ass. 133 (1992) (statement of Howard N. Lefkowitz, Chair of the Committee on Corporation Law, The Association of the Bar of the City of New York). Had the legislature intended to preclude derivative claims by LLC members, it easily could have written an explicit prohibition into the law. As Judge Mishler concluded in Weber, "the legislature's failure to include a derivative action provision in the [NYLLCL]" does not "prevent[] us from recognizing such a right at common law." 110 F. Supp. 2d at 131.

Third, the New York state court decisions do not provide a persuasive basis for concluding that LLC member derivative actions are prohibited. See Hoffman v. Unterberg, 780 N.Y.S.2d 617 (2d Dep't 2004); Tzolis v. Wolff, No. 108353/05, 2006 WL 1310621 (N.Y. Sup. Ct. Mar. 20, 2006); Lio v. Zhong, No. 600455/05, 2006 WL 37044 (N.Y. Sup. Ct. Jan. 6, 2006); Schindler v. Niche Media Holdings, LLC, 772 N.Y.S.2d 781 (N.Y. Sup. Ct.

2003).  With one exception, no state court has even discussed the common law right of an LLC member to assert derivative claims, nor has any state court considered the similarities between LLC members and limited partners and corporate shareholders. Although the Lio court acknowledged -- in dicta -- that derivative suits at common law might remain, it determined that "most courts" have held that no such right existed.  Lio, 2006 WL 37044, at *3.  "Most" in this decision, however, referred to the only two state courts to have considered the issue, both of which relied exclusively on the fact that the legislature struck the explicit derivative provision in the NYLLCL to reach their conclusions, without addressing the considerations discussed above.  See Hoffman, 780 N.Y.S.2d at 620; Schindler, 772 N.Y.S.2d at 785 (N.Y. Sup. Ct. 2003).

        While this Court must give "proper regard" to state court rulings, these lower state court decisions are not controlling.  Travelers Ins. Co. v. 633 Third Assocs., 14 F.3d 114, 119 (2d Cir. 1994).  Indeed, in the limited partnership context, as here, the Second Circuit's decision recognizing derivative suits conflicted with a New York lower appellate court decision to the contrary.  See Klebanow v. N.Y. Prod. Exch., 344 F.2d 294 (2d Cir. 1965); cf. Millard v. Newmark & Co., 266 N.Y.S.2d 254 (2d Dep't 1966).  When the issue reached the New York State Court of Appeals, it agreed with the reasoning of the Second Circuit over the lower state court.  See Riviera Cong. Assocs. v. Yassky, 18 N.Y.2d 540, 547 (1966) ("We hold that the

plaintiffs are authorized to sue as limited partners on behalf of the partnership entity to enforce a partnership claim when those in control of the business wrongfully decline to do so.").  Thus, while lower state court decisions must be considered, they are not binding.

Finally, Bischoff's claims are properly characterized as derivative.  He has alleged significant personal losses but only as a result of FB Co.'s losses of several hundred million dollars due to defendants' alleged misconduct.  The cause of action thus belongs to the LLC, and to the extent that Bischoff is injured, that injury flows from his status as a member of FB Co.  See Excimer Assocs. v. LCA Vision, Inc., 292 F.3d 134, 139-40 (2d Cir. 2002); see also Lenz ex rel. Naples Tennis Resort v. Associated Inns & Rests. Co. of Am., 833 F. Supp. 362, 380 (S.D.N.Y. 1993) (finding that misconduct and misappropriation of funds which reduce partnership's income and distributions states a derivative claim).

Defendants argue that Bischoff should have pled his claims directly, for individual claims against managing members, at least for breach of fiduciary duties, are permissible under New York law.  See NYLLCL § 417(a) (governing limitations on the "personal liability of managers to the [LLC] or its members" in the LLC operating agreement) (emphasis added); Nathanson v. Nathanson, 799 N.Y.S.2d 83, 84-85 (2d Dep't 2005) (finding plaintiff sufficiently alleged cause of action against LLC manager-member for breach of fiduciary duty).  Even assuming

defendants owed Bischoff a separate duty sufficient to provide a
basis for a direct action, he is not precluded from asserting
derivative claims on behalf of the LLC.  Cf. Excimer, 292 F.3d at
140 (finding corporation's claim for injury "does not preclude
the plaintiff from asserting its claim directly" where plaintiff
has also sustained direct harm).

        Taking into consideration all available resources --
the common law, the statute, its legislative history, federal and
state court precedent, and the nature of plaintiff's claims -- I
conclude that the New York Court of Appeals would hold that a
member of a New York LLC may bring a derivative suit on behalf of
the company.  Accordingly, defendants' motion to dismiss is
denied.

**B.   Plaintiff's Cross-Motion for Remand**

        For purposes of diversity jurisdiction, an LLC has the
citizenship of each of its members.  See Handelsman v. Bedford
Vill. Assocs. Ltd. P'ship, 213 F.3d 48, 51-52 (2d Cir. 2000);
Cabrini Dev. Council v. LCA-Vision, Inc., 197 F.R.D. 90, 93
(S.D.N.Y. 2000).  Thus FB Co. shares citizenship with its member,
Bischoff, who is a New York citizen.  There is no dispute that as
long as Bischoff may bring derivative claims on behalf of FB Co.,
then FB Co. is a true defendant that destroys complete diversity
in this case.  See Haymes v. Columbia Pictures Corp., 16 F.R.D.
118, 120 (S.D.N.Y. 1954) (citing Lavin v. Lavin, 182 F.2d 870 (2d
Cir. 1950)); see also Smith v. Sperling, 354 U.S. 91, 97 (1957)
(holding a corporation is a proper defendant in a diversity case

where managers are antagonistic to the suit, even though the cause of action belongs to the corporation).

Defendants argue that FB Co.'s presence in the suit must be disregarded because it has been fraudulently joined -- it is only a party in the action because of plaintiff's non-existent derivative claims. See Briarpatch Ltd. v. Phoenix Pictures, Inc., 373 F.3d 296, 302 (2d Cir. 2004) (holding that under fraudulent joinder doctrine, "courts overlook the presence of a non-diverse defendant if from the pleadings there is no possibility that the claims against that defendant could be asserted in state court"). Because I conclude that Bischoff, as a New York LLC member, may bring a derivative suit on FB Co.'s behalf, the derivative claims survive. Hence, this Court lacks subject matter jurisdiction and Bischoff's cross-motion for remand to the state court is granted. See 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.").

**CONCLUSION**

For the reasons set forth above, defendants' motion to dismiss is denied and plaintiff's cross-motion for remand is

granted. The case is remanded to the New York State Supreme Court, New York County.

SO ORDERED.

Dated:    New York, New York
          June 29, 2006

DENNY CHIN
United States District Judge

**APPEARANCES:**


For Plaintiff:


        SCHULTE ROTH & ZABEL LLP
            By:  Martin L. Perschetz, Esq.
                Michael E. Swartz, Esq.
                Brian Stavrides, Esq.
        919 Third Avenue
        New York, NY  10022


For Defendants and Nominal Defendant:


        WEIL, GOTSHAL & MANGES LLP
            By:  Peter D. Isakoff, Esq.
                Mitchell D. Haddad, Esq.
                Jared R. Friedmann, Esq.
                Timothy D. Sini, Esq.
        767 Fifth Avenue
        New York, NY  10153

            - and -

        GOLENBOCK EISEMAN ASSOR BELL & PESKOE LLP
            By:  Martin S. Hyman, Esq.
        437 Madison Avenue
        New York, NY  10022